[Nos. 1339 and 1340, September 1, 1910.]

TERRITORY OF NEW MEXICO, ex Rel, FELIX H. LESTER, Appellee, v. A. W. SUDDITH, A. L. HUTCHISON and E. B. CRISTY, Judges, and JAMES HILL and BERNARD CRAWFORD, Clerks of Election in the 2nd Ward of the City of Albuquerque in the Municipal Election Held April 5th, 1910, Appellants.

TERRITORY OF NEW MEXICO, ex rel, FELIX H. LESTER, Appellee, v. N. E. STEVENS, GEO. H. RAMSEY and E. H. DUNBAR, Judges, and HARRY KELLEY and PERCY J. HAWLEY, Clerks of the Election in the 3rd Ward of the City of Albuquerque, in the Municipal Election Held April 5, 1910, Appellants.

SYLLABUS (BY THE COURT.)

1.    Where judges in a municipal election show in making their return under C. L., Secs. 1687, 1689, that a certain number of ballots have been cast which they have failed to count for any candidate, mandamus and not quo warranto, is the proper remedy to enforce compliance with the duty to count and make returns of such ballots, imposed by law.

2.    After ballots have been tendered by the voter and deposited in the ballot box the quasi judicial function to reject ballots given election judges by C. L., Secs. 1665, 1668, becomes

exhausted and thereafter their powers as to such ballots become purely ministerial.

3.   Such ministerial duties include the obligations to count the ballots for the candidates whose names appear thereon and to make return thereof to the city clerk.

4.   By making a partial return which, while disclosing the receiving of certain ballots, affirmatively shows that these have not been counted for any candidate and by thereupon adjourning sine die, election judges do not become functi officio but are still subject to mandamus requiring them to reassemble and count such omitted ballots.

5.   The writ of mandamus will not require the performance of an act beyond the power of the respondent or dependent upon the will of a third person not a party to the suit.

Appeal from the District Court for Bernalillo County before I. A. ABBOTT, Associate Justice.   Reversed and remanded.

MANN & VENABLE for Appellants.

Judges of election are not ministerial officers but quasi judicial officers vested with discretion and involving the exercise of judgment in the counting of ballots, while the canvassing boards is ministerial and has only to compute results from the returns as given to them.   C. L. 1897, secs. 2443, 2446, 2447, 692; Bull v. Southwick, 2 N. M. 321; Territory v. County Com., 5 N. M. 1; Re Sloan, 5 N. M. 590.

The writ of mandamus does not lie to direct how judicial officers shall exercise their judgment nor to control their discretion.   26 Cyc. 158 and cases cited; Corbert v. Naylor, N. Y., 57 Atl. Rep. 304; State v. Deane, 23 Fla. 121, 1 So. 698, 2 Am. St. 343; People v. Riordan, 49 Hun. 425, 3 N. Y. Sup. 560.

Upon filing the returns by the judges of election they became functus officio.   C. L. 1897, secs. 692, 2447; Bull v. Southwick, 2 N. M. 321; Territory v. County Com.,

5 N. M. 1; Re. Sloan, 5 N. M. 590; State v. Russell, 34 Nebraska 116, 51 N. W. 465; 15 L. R. A. 741; 26 Cyc. 274, n. 44 and cases cited.

Mandamus will not be granted unless some substantial right is involved. The People ex rel Alexander H. Bailey v. The Supervisors of Greene, 12 Barbour 217; 26 Cyc. 156 and cases cited.

The affidavits of judges of election will not be heard to impeach their returns. 10 Am. Enc. Law 829; Ward v. Thompson, 48 Iowa 588; John Nichols v. John Foster, 89 Ill. 386; City of Chicago v. Saldman, 225 Ill. 626, 629; 39 Century Digest 1291, sec. 290 and cases cited.

Evidence other than the returns themselves is not competent to show contents of returns until some foundation is laid for such secondary evidence. Patton v. Coates, 41 Ark. 111; 15 Cyc. 419, 420.

Quo warranto is an adequate remedy. 26 Cyc. 139; 32 Cyc. 1420.

Mandamus can create or impose no powers, rights or duties and may be employed to enforce only such duties as already exist. 26 Cyc. 165 and cases cited; Re Sloan, 5 N. M. 590.

Board of election judges were functi officio. C. L. 1897, secs. 1679, 1687, 1689; Rosenthal v. State Board of Canvassers, 19 L. R. A. 157; McCrary on Elections, 3d ed., sec. 322; 10 Am. & Eng. Enc. of Law, 2d ed., 736; State v. Donnewirth, 21 Ohio St. 216; State v. Knight, 6 Houst., Del. 146; People v. The Board of Town Canvassers, 19 N. Y. Supp. 206; Raemer v. The Board of City Canvassers, 90 Mich. 27.

SUMMERS BURKHART for Appellee.

Mandamus is the appropriate and exclusive remedy to compel a public officer to perform a ministerial duty. 26 Cyc. 139.

The duties of judges and clerks of election are purely ministerial. C. L. 1897, secs. 1665, 1668, 1687, 1689, 2443; Mechem's Public Office and Officers, secs. 491, 511, 522, 657, 660; Bull v. Southwick, 2 N. M. 351; In re Sloan, 5

N. M. 590; .15 Cyc. 379, 380 and cases cited; Corbett v. Naylor, 57 Atl. 304.

A substantial right is involved. 31 Cyc. 337, 606 and cases cited; In re Sloan, 5 N. M. 590, 607.

The presumptions in favor of the performance of official duty and of the validity of official acts are rebuttable. 22 Am. & Eng. Enc. of Law, 2d ed., 1275d and cases cited; 11 Am. & Eng. Enc. of Law, 2nd ed., 488, IV, V, and cases cited.

Quo warranto is an extraordinary legal remedy and not a remedy in the ordinary course of law. High's Extraordinary Legal Remedies, 2 ed., secs. 623 *et seq.*

An election board does not become *functus officio* until it has fully performed the duty prescribed by law. 15 Cyc. 383, 385; Cooley Con. Lim. 936; High Extraordinary Legal Remedies, sec. 56; Re Sloan, 5 N. M. 590, 600; State ex rel. Metcalf v. Garesche, 65 Mo. 480.

## STATEMENT OF THE FACTS.

The relator Felix H. Lester was democratic candidate for the office of mayor of the city of Albuquerque at an election held April 5, 1910. He prayed writs of mandamus against the respondents who were judges and clerks of election in the second and third wards of the city of Albuquerque, directing them to reconvene as such election boards and in the second ward count two ballots which he alleged they had failed to count, and in the third ward seven ballots which he alleged they had failed to count. He set up in his information that the respondents had refused to count said ballots; that the returns of the respondents did not correctly state the result of the election; that if said returns had been correctly and properly certified they would have changed the result of the election. In case No. 1339 two of the judges and one of the clerks filed a verified answer admitting all the allegations of the writ except that they did not certainly know for whom one of the ballots not counted was cast. The other clerk did not appear and E. B. Cristy, one of the judges, is the only appellant. He demurred and his demurrer having been overruled answered alleging, first, that the court

Territory ex rel v. Suddith et al.

had no jurisdiction of the subject matter or of the parties
for the reason that having made and certified the return
of said election and filed same with the city clerk as re-
quired by law and adjourned sine die they became functus
officio. Second, that the relator had an adequate remedy at
law by quo warranto. Third, that said judges and clerks
performed the duties of their office as provided by law.
Fourth, denied that there were two ballots cast for the
democratic candidate for mayor which were not counted
for him, but on the contrary stated that there were two
ballots not counted, one of said ballots being for the dem-
ocratic candidate and one being for the republican candi-
date for mayor. Fifth, that the ballots not counted were
by agreement of said judges and clerks decided by them to
be invalid and not entitled to be counted in said election.
Sixth, he denied all of the other material allegations of
said writ.

In case No. 3940, G. H. Ramsey and E. H. Dunbar,
and Harry Kelley, one of the clerks, filed a verified answer
to the writ admitting all its allegations. N. E. Stevens,
the other judge, filed an affidavit in support of the writ
and afterwards filed a demurrer to the application on the
ground that the court had no jurisdiction and that the
application and alternative writ did not state facts suffi-
cient to state a cause of action. His demurrer being over-
ruled he did not further answer.

J. P. Hawley, the remaining clerk, filed an answer
practically in the same form as appellant's answer in the
other case, adding on information and belief that the rela-
tor's name appeared on no Socialist ticket for mayor but
alleging that seven Socialist ballots were cast and counted
but not credited to any one for the office of mayor because
all the respondents agreed that the said ballots were illegal
for the reason that the ticket had not been filed with the
probate clerk ten days before the election; he then denied
generally every other allegation of the writ. In each case
the relator filed a motion for judgment on the pleadings
based on the ground that the pleadings affirmatively showed
that the respondents had not performed the duties imposed
by law. The court sustained said motions, peremptory

writs were allowed and appeals taken in case No. 1339 by E. B. Cristy, and in case No. 1340 by N. E. Stevens and J. P. Hawley.

The remaining facts appear in the opinion.

## OPINION OF THE COURT.

POPE, C. J.—The present case involves the efficacy of the writ of mandamus to reach the conditions complained of. The utility of this writ was considered by this court in Delgado v. Chaves, 5 N. M. 646, 648, where, in an opinion written by Mr. Justice Freeman, the ends which the writ has accomplished were very lucidly exemplified and it was remarked that "it would be a vain and useless exhibition of research to undertake to point out the almost innumerable instances in which this writ has been successfully invoked." As applied to matters of elections this writ has been found to be of special efficacy. The adequacy and especially the promptness of the relief afforded by it has made it a favorite and valuable method of redress for the omission or violation of legal duty by election officers, and these qualities have led the courts to deal with the writ liberally in the interest of honest elections and a fair count. While so treating the writ, however, in this class of cases it has not been forgotten that its use is limited by well settled principles, among others the axiom that the writ will not be allowed to control a discretion; that while it will enforce, it will not create a duty, and that it will not be granted where it is manifestly beyond the power of the respondent to perform the duties enjoined. Bearing in mind the uses and the limitations of the writ we are called upon to determine whether in the present instance its issuance was justified. To determine this we must first ascertain what were the duties of the territorial judges of election. These duties of course flow solely from the provisions of statute. It is provided (C. L., Sec. 1687) that "the judges shall close the election at six o'clock in the afternoon and immediately thereafter shall open the ballot boxes and publicly count the votes cast for each candidate, certifying the poll books as provided by law." By C. L. 1689, such certificate "shall contain the number

of votes cast for each candidate, setting forth the same in writing and in figures, without there being any alteration or change." Sec. 2447 provides: "The returns of all municipal elections shall be made to the clerk or recorder of the corporation, and shall be opened by him on the third day after election. He shall call to his assistance the mayor of the corporation, or if the mayor shall have been a candidate at such election, then any justice of the peace of the county, and shall, in his presence, make out an abstract and ascertain the candidates elected in all respects as required by law for the canvass of the returns of county elections, and shall in like manner make out a certificate as to each candidate so elected, and cause the same to be delivered to him or to be left at his place of abode."

It is clear that under the foregoing it was the duty of the judges, among other things not here material, (a) to count the votes cast for each candidate, and (b) to set forth the number of votes cast for each candidate in writing and in figures in a return to the city clerk.

It appears from the record in this case that the judges counted the votes and reported, as to the ward involved in case 1339, 537 votes cast, and reported as to the ward involved in case 1340, that seven socialist tickets had been cast. It affirmatively appeared from the return in the first case, however, that while 537 votes were cast, only 535 were included in the vote declared for the two candidates and that in the second the seven socialist tickets were not counted at all. The relator, Lester, alleging that these nine ballots if counted would have been favorable to him to an extent such as to insure his election, prayed that the judges be required to extend upon their returns the names of the persons for whom these uncounted votes had been cast. Since the law as we have seen requires the judges not only to count the votes but to declare upon their return the number of votes for each party, and since upon their own attempted return it is evident that while the judges have counted, they have, to the extent of nine ballots, not declared, the primary impression upon the average mind would be that they had to that extent omitted to perform their legal duty. This being true, and since the

very essence of the writ of mandamus is to require the performance of such a duty, it would seem, as a matter of impression that this was a proper case for the allowance of such a writ and that the court below acted properly in ordering the judges of election to declare for whom these nine votes were cast.

Having thus stated the matter as one of impression it remains to be determined whether or not upon a full consideration of the several objections here urged to the writ of mandamus as the proper remedy for the vindication of such an apparent right, the proceedings below may still be sustained. The objections presented by appellant to the decision appealed from are not without force and have been given the consideration which their importance demands. It is urged at the outset that the mandamus will not lie because there is a plain adequate and complete remedy in the writ of *quo warranto*. The doctrine on this special subject is thus stated in Spelling on Injunctions and other Ex. Rem., Sec. 1375.

"In order that the existence of another remedy shall constitute a bar to relief by mandamus, such other remedy must not only be an adequate remedy in the general sense of the term, but it must be specific and appropriate to the circumstances of the particular case. It must be such a remedy as is calculated to afford relief upon the very subject of the controversy. For if it is not adequate to afford the party aggrieved the particular right which the law accords him, mandamus will lie, notwithstanding the existence of such other remedy."

It is difficult to see how the remedy of *quo warranto*—even ignoring the fact that it is in this Territory a writ not of right but issuable only by consent of the attorney general—could afford an adequate substitute for the writ here sought. The specific remedy here sought was to secure a declaration upon the face of the returns as to the contents of certain ballots in order that the election of relator might prima facie appear and he be thus awarded a certificate of election. *Quo warranto* would manifestly not be adequate to the vindication of such a right and therefore would not preclude mandamus.

It is next urged that the court below should not have ordered the respondent to declare the ballot for the reason that it was within the discretion of the judges of election to reject votes; and that in holding, as shown by the record that the two ballots in case 1339 should not be counted because upon forms for the wrong ward and in further holding that the seven ballots in the other case should not be counted because upon Socialist tickets and illegal in not having been filed with the probate clerk of the county for ten days, the judges were exercising simply the discretion allowed them by law. We fail, however, to perceive any force in this position. Our territorial statutes give election judges no discretion in the matter of counting or declaring ballots once received. There is a discretion, it is true, at the moment a ballot is tendered. Comp. Laws, Secs. 1665, 1668 and 2443, expressly declares the right of judges of election to reject ballots when tendered. Thus Sec. 1665 is as follows: "When any person offers to vote, whose qualifications, as required by this law, are not personally known to any of the judges, he may be examined under oath as to said qualifications and those who take a false oath shall suffer the penalty prescribed by law for perjury."

Sec. 2443 contains the following proviso to the municipal laws: "Provided, That nothing in this act shall be so construed as to prevent any or all persons so registered from being challenged at the polls as to their right to vote, or to prevent the judges of election from rejecting the vote of any person so registered, for cause, at the polls."

But even in these cases it is provided by section 1668 that a record must be made showing the persons for whom the vote is tendered. That section reads as follows: "When any person offers to vote and is rejected, his name shall be registered in the poll book, and all the names of the persons he offers to vote for, and the word, rejected, shall be written opposite the name of the person offering to vote."

But this discretion exists only when the ballot is tendered. Once received, the duty of the judges becomes ministerial and threefold, to count, to declare by return and deliver the ballots to the city clerk. Whether a vote once received is in proper form and may legally be counted is a matter for a tribunal other than the election judges. We think, therefore, that there was no question of judicial discretion involved.

It is insisted, however, that the writ will not lie because the defendant board, having in part counted the votes and having made a return and having adjourned *sine die,* is no longer a board, that it has thereby become *functus officio,* and it may not be reassembled and required to perform further duties; or, as said in one of the cases cited by appellant, the court "cannot animate its dead body with the breath of life."

The defect in this last argument lies in a failure to recognize that official boards, differing from natural persons, cannot commit suicide. Election judges created for a specific purpose and to perform certain public duties have no definite tenure of office. Their life is until their duty is performed or until the performance of that duty is rendered impossible by intervening events. But until such duty is performed or such events intervene the board's existence continues and this, even though through inadvertence or purpose it may have adjourned *sine die.* The performance of a public duty by such a board cannot be avoided or the public interests defeated by a voluntary attempt to terminate its own life. Even where the board says its work is over the law keeps it in existence to complete that work if unfinished. For example, had the board in the present case adjourned *sine die* without counting the votes at all, would it have been *functus officio* so that it could not be reassembled for that purpose? Or had it counted the votes but adjourned without day, before making any return to the city clerk, would the whole election be defeated upon the plea that the board has become dead and therefore cannot be called together to make the return? These observations show that the power to reassemble the board depends not upon whether it has declared

itself adjourned but upon whether it has completed its statutory duty. If the latter has been accomplished the board dies by force of that very fact, whether it has declared itself adjourned or not; if on the other hand it has not been accomplished no resolution to adjourn *sine die* can render the board *functus officio*. If therefore the continuance of the board's existence depends upon whether it has completed its work, upon what principle can it be held that that existence has expired when the board (as shown by its own return) still has unperformed the statutory duty to declare the contents of ballots sufficient in number to turn the election?

The conclusion is, we believe, inevitable that so long as the board has a specific statutory duty imposed upon it still unperformed it continues to exist and is subject to the call of the law for a completion of that duty. An illustration will be found in certain duties imposed upon this court. It has been the practice of congress in creating additional associate justices from time to time to make it the duty of this court to redistrict the Territory, for judicial purposes and to assign the judges to the several districts. Such duty when performed has been considered as exhausting the power of the court as conferred by the several acts. But suppose the court failed, in meeting for this purpose, to assign one of the judges or omitted to include certain counties in any district and then adjourned? Would it be contended that it could not reassemble and fully perform its duty? We think not. Neither do we deem the adjournment of the respondent boards as controlling but they are subject to the mandate of the court to reassemble and complete their legal duties. True, this court in the illustration just given, is a permanent body whereas a board of election judges is temporary—and this circumstance is mentioned in some of the authorities as controlling the right to reassemble, as for instance where one or more of the election board are county officials. We fail, however, to recognize the distinction. A temporary function imposed upon a board otherwise permanent does not make it otherwise than temporary as to that function. These views constitute a sufficient answer to several of the further arguments for

appellant.  It is said that by adjournment these judges have become mere individuals and not subject to a writ. But if as we have seen their board is yet existent they are still officials subject to mandate.  It is also said that the mandamus will not lie to create a duty but simply to enforce performance of it, and arguing that these judges were under no obligation after making their return to amplify it, it is contended that the writ of mandamus might not be invoked to require them to do what they were not obliged to do without it.  But if, as we have seen, there was a clear omission remaining to be remedied and if as we have seen, the judges still remain officers for that purpose, it follows that there was an obligation upon them to remedy the return, if still in their possession, independent of any order to that effect.  Indeed, in People v. Nordheim, 99 Ill. 553, it was held that the city clerk who had possession of such returns would be required by mandamus to permit such judges to amend them, so as to comply fully with the law.  By this last we do not desire to be considered as holding that election judges should, after making their returns, be permitted at their discretion to withdraw them and make new returns.  We can see that in the case of a close election such a course might lead to grave abuses. It will be sufficient to pass upon cases differing from the present one as they reach us and it will be assumed that right minded officials will as in the present case require an order of court before permitting a change in returns already made.  But the case now before us is one in which no such danger lurks.  The return itself shows that the contents of certain ballots have not been extended and the request is simply that this omission shall be remedied by a supplemental return.  To do this will import no new ballots into the return.  It will simply, as the statute requires, declare the contents of those already there and thus give relator, if his contention of fact be correct, the prima facie showing of election necessary to a certificate to that effect. This we think he was, so far as the present objection is concerned, entitled to.

This position we consider sustained not only by principle but by precedent.  The general doctrine is declared in

15 Cyc. 383, 384 as follows: "But on the other hand it has been repeatedly decided and seems to be the better doctrine that after canvassers have made one canvass, declared the result, and adjourned, they may be compelled by mandamus to reassemble and make a correct canvass of all the returns, where it appears that upon the first canvass they neglected or refused fully to perform their duty. It is settled by abundant authority that where the board refused to canvass any of the votes it may be compelled so to do by mandamus, even though it has adjourned *sine die,* and there can be no difference in principle between a refusal to canvass any and a refusal to canvass a part only of the returns."

The text is sustained by numerous citations. Fair samples of the expressions in these supporting authorities are found in State ex rel. Rice v. The County Judge, 7 Ia. 200, where it is said: "The next subject of examination is the answer that the duty had already been performed. Inasmuch as the canvassers have rejected the returns from three of the townships, which they should have counted, it is legally true that the duty has not been discharged; and when the writ now commands it is not, in a proper legal sense, to recanvass, but to canvass the returns of that election. It is to do that which was before their duty, but which they omitted. What has been done is as if it had not been done, and the judge is now commanded to proceed as if no former steps had been taken."

And in Lewis v. Marshall County Com'rs., 16 Kan. 102, 22 A. R. 275, where speaking through Mr. Justice Brewer, the court says: "It is the duty of the canvassers to canvass all the returns and they as truly fail to discharge this duty by canvassing only a part and refusing to canvass the others as by refusing to canvass any."

While it is true that upon examination some of the authorities cited in support of the text in 15 Cyc. 384 *supra,* are found to be qualified and in some instances are influenced by local statute, we find that many of them give ample support for the position here assumed. It does not seem necessary to consider or quote these in detail. We do not feel inclined in deference to what we deem ill advised

precedents, which may be found to the contrary, to abdicate for the courts a power so conducive to the purity of elections. Where as here that power is sustained by ancient and eminent authority, followed by numerous modern courts, judicial retreat is no less to be deprecated than on the other hand would be judicial encroachment.

While upon all the foregoing grounds the writ below was properly granted the remaining assignment of error impresses us as more serious. It proceeds upon the contention that the writ should not have been granted because it is manifestly beyond the power of the respondent to obey it. The information upon which the writ issued shows that the ballots with the imperfect return complained over "were deposited in the ballot box with the ballots cast at said election in said ward and the said box locked and sealed up and returned to the clerk of the city of Albuquerque and that the said judges have had no opportunity to inspect or correct the same for that reason." It is said by appellants that this averment admits the relator out of court since it discloses the returns, which it is sought to correct, to be in the hands of a third party not a party to the suit. It is argued that there is no assurance that the writ if granted can be obeyed and that courts will not grant the writ in doubtful cases where a compliance with it depends upon the caprices of a third person not before the court. This argument impresses us as sound and its conclusion unavoidable. It is fundamental that to authorize the writ it must appear that if granted it will be effectual as a remedy and that it is within the power of the defendant, as well as his duty, to do the act in question. 2 Spelling on Injunction and other Extraordinary Remedies, Secs. 1369, 1377.

Such power does not appear from this record, but the very contrary. If as relator alleges the records were, when the information was filed, so far beyond the power of the respondents that "they have had no opportunity to inspect or correct the same," how will the granting of the writ give them that opportunity? Mandamus does not confer power nor create opportunity. It enforces the exercise of an existing power, the improvement of opportunity already present.

This view of the matter constrains us to the view that the writ was improvidently granted, at least insofar as it directs returns not within the power of respondents to be amplified by them. The cause must accordingly be remanded. Whether by amendment in this suit or by further proceedings otherwise the defect now held to exist can be remedied so as to bring the returns back into the power of the respondent in order that a writ may operate upon them we need not here determine or intimate. In order, however, that the trial court may be free to deal with the matter unhampered by explicit directions in the mandate we reverse and remand the cause for further proceedings not inconsistent with this opinion, and it is so ordered.

Associate Justices McFie and Wright concur.

Associate Justices Parker and Mechem concur in the reversal. Associate Justice Abbott having tried the case did not participate.