625 P.2d 1233

**Henry LIEB and Jackie Lieb, his wife, Plaintiffs-Appellants,**

**v.**

**Robert MILNE dba Milne International Sales & Service, Defendant-Appellee.**

**No. 4403.**

Court of Appeals of New Mexico.

Aug. 26, 1980.

Sheehan & Sheehan, Albuquerque, for plaintiffs-appellants.

Overstreet & Sandenaw, P. C., Alamogordo, for defendant-appellee.

## OPINION

ANDREWS, Judge.

This action arises out of the sale of a specially constructed truck to the plaintiffs, Henry and Jackie Lieb. On January 17, 1977, the Liebs entered into an agreement calling for the purchase of a 1977 Chevrolet van from defendant, Milne. Milne was to convert that van into a refrigerated carrier. Milne purchased the van from Sacramento Chevrolet and had it transported to Stewart Equipment Company in El Paso for installation of the refrigeration that was necessary under the contract. Stewart, in turn, had the refrigeration equipment installed by Western Battery and Magneto, under contract.

The truck was delivered to the Liebs on February 22, 1977. The retail sales agreement covering this transaction included a limitation on the implied warranty—those warranties were limited to the one year express warranty given by Chevrolet. Though there is conflicting evidence as to exactly what the truck was warranted to do, read in the light most favorable to defendant it appears that the truck was to maintain temperatures down to 35 degrees Fahrenheit. During the four months after delivery the Liebs had repeated difficulties with the refrigeration portion of the truck. Other mechanical difficulties also resulted from the fact that both the refrigeration unit and the truck's air conditioner were run off the same compressor. This dual use overtaxed the available equipment.

On June 22, the Liebs met with Milne and requested that the terms of the warranty be met; they noted repeated problems with the truck and unsatisfactory repair under the warranty. At that time, they also requested an extension of the 12,000 mile limitation on the warranty which was soon to run out. Milne refused, and the Liebs were unable to reach any satisfactory resolution of this problem. During the next several months the Liebs continued to use the truck. Late in January, 1978, the Liebs unsuccessfully attempted to rescind the contract of sale. This suit followed.

At trial the Liebs proceeded under four theories: misrepresentation, revocation of acceptance and cancellation of the contract, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for particular purpose. Although the trial court made only four findings of fact, it did note whether each of the one hundred seventeen requested findings submitted by the plaintiff were given or rejected. It concluded:

8. There was implied in the contract of January 1977, an implied warranty of merchantability and an implied warranty of fitness for particular purpose.

9. The Plaintiff had the burden of proving that under said warranty the vehicle *must carry frozen products.*

10. The Plaintiff failed to carry its burden of proof in Counts III and IV.

11. Plaintiff's Exhibit 1, the Retail Sales Agreement of January, 1977, properly modified or limited the implied warranties pursuant to Sec. 2–316 of the U.C.C.

12. *The implied warranties expired prior to the filing of this lawsuit.* (Emphasis added.)

Those conclusions were based on Findings 1 and 2 that plaintiffs failed to carry the burden of proof on Counts I and II. The court's findings relating to Counts III and IV were:

3. There is contained in plaintiff's Exhibit I, a Retail Sales Agreement, limiting the implied warranties to the term of the express warranty by Chevrolet Motor Company.

4. At the time this action was commenced, the express warranty had expired.

Additionally, although not indicated in the court's Findings of Fact and Conclusions of Law that it adopted and incorporated certain requested findings of defendant, the court did mark "given" beside these pertinent findings requested by defendant:

7. Plaintiffs did not attempt to rescind the contract between the parties until January of 1978, which attempt was untimely and additionally, the plaintiffs' use of the motor vehicle for some 64,000 miles was inconsistent with the equitable remedy of rescission.

8. The motor vehicle carried a warranty of 12,000 miles or 12 months, both of which had expired prior to bringing this lawsuit and the attempted rescission of the plaintiffs in January of 1978.

13. Plaintiffs' acceptance of the motor vehicle and plaintiffs' use thereafter have estopped plaintiffs from asserting any claim against defendant for nonconformity.

14. Plaintiffs have waived any claim against defendant because of any nonconforming use.

and also marked as "given" defendant's requested conclusion that all four counts should be dismissed with prejudice "because of lack of substantial evidence, waiver and estoppel."

Fitting the "given" findings and conclusions together with the court's findings and conclusions, it appears to us that Counts III and IV were dismissed because the trial court believed that suit on the implied warranties had to be brought within the one-year warranty period stated in the Retail Sales Agreement.

The Liebs contend that three errors occurred. First, that the trial court erred in holding that a suit brought after the expiration of the one-year time limit or the 12,000 mile limit, barred any action on the implied warranties. Second, that the trial court in its four findings of fact, failed to find either way on facts material to the issues in the case, and thus committed reversible error. Third, that the findings of the trial court particularly with regard to revocation were not supported by substantial evidence. We hold that the first of these issues is dispositive. The trial court clearly erred in considering the one-year warranty limitation period as being a jurisdictional bar to an action under the implied warranties. We therefore reverse and remand this action.

The original complaint filed by the Liebs stated, "[t]hat at the time of said sale . . . Defendant . . . knowing that Plaintiffs owned and operated a specialty food store, warranted and represented to Plaintiffs that said goods would remain at a temperature compatible with bringing frozen items intact from California to Alamogordo, New Mexico. . . ." The evidence most favorable to the defendants, however, is that this was not the case. Representations were made that the truck would maintain temperatures of 35 degrees Fahrenheit and could be used to transport non-frozen items. Thus

reviewing either the theory of implied warranty of merchantability or the implied warranty of fitness for particular purpose, the correct consideration is whether the truck would have maintained that 35 degree temperature.[1]

The issues of implied warranty of merchantability and implied warranty for a particular purpose were both litigated in the District Court, as recognized in the trial court's Conclusion No. 8. We find an error in the conclusion of the trial court as to the terms and effects of these warranties. It is clear that the contention that "[t]he plaintiff had the burden of proving that under said warranty the vehicle must carry frozen products," must be considered in light of both of the implied warranties.

### A. Implied Warranty of Merchantability

Section 55–2–314, N.M.S.A. 1978, defines the standard for determining whether a product is merchantable.

(2) Goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged and labeled as the agreement may require and

(f) conform to the promises or affirmations of fact made on the container or label if any.

This warranty should not be confused with an express warranty—it arises by operation of law, not through agreement of the parties.[2] The purpose of this section is clear; a merchant need not only supply a product in compliance with the terms of a contract, but unless expressly stated, those goods must conform to a basic standard. It is not the buyer who sets that standard, it is § 55–2–314.

Based on testimony most favorable to the defendant, the contract was for a truck which would maintain 35 degrees. There was testimony that the installation of the refrigeration equipment in conjunction with the truck's own equipment for air-conditioning was sub-standard. Thus, the trial court erred in concluding that the plaintiffs' burden with regard to the implied warranty of merchantability was to prove that the truck would freeze goods. Plaintiffs should have had to prove that the truck would pass without objection in the trade under the contract description—that it would satisfactorily cool to 35 degrees. Beyond this, even if it were proved that under some circumstances the truck would cool to 35 degrees, if the plaintiffs had proved that the unit was so shoddily constructed as to render the system unusable in conjunction with the truck's air-conditioner, they would have sustained their burden of proof.

### B. Implied Warranty of Fitness for a Particular Purpose[3]

The argument above applied in essential part here. Again, the ability of the truck

---

1. Although the original complaint states that the truck was represented as being able to bring "frozen items intact," it also stated that, "said refrigerated box maintained an average temperature of fiftyfive (sic) (55°) Fahrenheit." Thus, although the warranties were, in fact, for a 35° truck, defendant was adequately notified of the vehicle's failure.

2. Note 2 of the Official Comment states, "[t]he question when the warranty is imposed turns basically on the meaning of the terms of the agreement *as recognized in the trade*." (Emphasis added.) The warranty then assures that once the terms are stated, all parties meet those terms to a standard of quality and performance which would "pass without objection in the trade."

3. § 55–2–315. Implied warranty: fitness for particular purpose. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section [55–2–316, N.M. S.A. 1978] an implied warranty that the goods shall be fit for such purpose.

to freeze goods is not the critical issue—rather, it is whether the truck did what it was supposed to do. Under this warranty, plaintiffs were required to prove: (1) that at the time of contracting Milne had reason to know of a particular use or purpose for which the truck was being ordered; (2) that the buyers relied on Milne's skill or judgment; and, (3) that the truck was not fit for that purpose. It is Milne's contention that he sold the Liebs a truck to transport bean sprouts and other oriental vegetables. The plaintiffs were required to prove that it could not be used for this purpose.

## C. *Limitation Period*

The court concluded that "[t]he implied warranties expired prior to the filing of this lawsuit." This Conclusion No. 12 confuses the limitation period on a warranty with a statutory (jurisdictional) time limit.

■ The truck was delivered on February 22, 1977. The warranties (both express and implied) ran for one year from that date. The court found that the warranties ran from the inception of the contract, January 17, 1977, and therefore, the letter sent by plaintiffs' attorney in January, 1978, was untimely. However, the court also treats the one-year period as a jurisdictional time limit for filing an action. It clearly is not. On June 22, 1977, prior to driving the vehicle 12,000 miles, plaintiffs approached defendant and informed him of their dissatisfaction. His refusal to remedy the problem at that date, and their attempts to rescind the contract should have been the subject of a factual determination. If Milne refused to provide the warranted service, the action was perfected at that time—subject only to the statutory time limit for filing an action. Cf. *Dennin v. General Motors Corporation*, 78 Misc.2d 451, 357 N.Y.S.2d 668 (1974). (Where the court held that "[t]his provision is not a one-year statute of limitation ... but establishes by its plain language a period during which a cause of action might accrue for failure to repair or replace a

defect in material or workmanship.") As in *Dennin*, if a covered defect is brought to the attention of the seller during this period and the seller fails to repair, the buyer may sue any time within the statutory limitation period. However, here the trial court refused to consider the issue of implied warranty. Thus, the trial court erred as to the time limit, and this was the critical issue in this action.

Relying on *Aguayo v. Village of Chama*, 79 N.M. 729, 449 P.2d 331 (1969), plaintiff alleges that certain of the material facts in this action were not addressed in the findings of fact. The correct rule, however, is stated in a more recent decision, *H. T. Coker Const. Co. v. Whitfield Transp., Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct.App.1974):

> [W]here a party has the burden of proof on an issue and requests findings on that issue, which are refused, the legal effect of the refusal of the requested findings is a finding against that party.

The requested findings of fact submitted by the plaintiffs were nothing short of epic. The trial court's method of dealing with the requested findings of fact was wholly sufficient.

The trial court erred in holding that a suit brought after the expiration of the one-year-or-12,000-mile limit barred any action on the implied warranties. Consequently, the case is reversed and remanded for the district court to make further findings and conclusions which recognize the existence of implied warranties unless excluded by § 55–2–316(2); the distinctions between implied and expressed warranties; to determine whether implied warranties were breached on June 22, 1978 and thereafter, and to enter a judgment accordingly.

IT IS SO ORDERED.

WALTERS, J., specially concurs.

SUTIN, J., dissents.

WALTERS, Judge (specially concurring).

I agree that the trial court erred in imposing a statute of limitations on this action concurrent with the term of the written warranty. Plaintiffs' dissatisfaction with the equipment and their complaints under the warranty were communicated to defendant in June 1977. Their causes of action on the implied warranties accrued on that date, well within the period of the express warranty. They had four years thereafter within which to bring suit. Section 37–1–4, N.M.S.A. 1978.

Waiver and estoppel, stated in defendant's Findings 13 and 14 and "given" by the court, are not applicable under the facts of this case. Section 55–2–714 of the Uniform Commercial Code specifically provides for a buyer's recovery of damages for nonconformity, *after* acceptance of the seller's goods and notification to the seller, for losses resulting in the ordinary course of events. Those damages may be determined "in any manner which is reasonable." Section 55–2–715 authorized, further, incidental and consequential damages resulting from a seller's breach. The buyer's claims are not waived, and he is not estopped by acceptance, if suit is brought within the period allowed by New Mexico's statute of limitations.

On plaintiffs' claim of misrepresentation, the findings are insufficient to support the conclusion of plaintiffs' failure to carry the burden of proof. There is nothing to indicate what elements were considered by the court concerning the burden of proof imposed on plaintiffs. The trial court should also be directed to enter specific findings on that issue.

Costs should be assessed against appellee.

SUTIN, Judge (dissenting).

I dissent.

This case should be remanded to the district court to make proper findings of fact sufficient to support a judgment.

Plaintiffs sued defendant to recover damages for misrepresentation, breach of warranty and for cancellation of a contract after revocation of acceptance. The contract involved the purchase by plaintiffs from defendant of a 1977 Chevrolet Van. Defendant raised affirmative defenses of statute of limitations, estoppel waiver, laches, accord and satisfaction.

Judgment was entered for defendant and plaintiffs appeal.

A. *The judgment is not supported by the findings.*

The court's "findings" were:

1. With reference to Count I, the evidence was equally balanced on the issue of a material representation.

2. With reference to Count II, the evidence was equally balanced as to whether the requirements of § 2–608(2) of the U.C.C. were met on June 22, 1977.

3. There is contained in plaintiffs' Exhibit 1, a retail sales agreement, limiting the implied warranties to the term of the express warranty by Chevrolet Motor Company.

4. At the time this action was commenced, the express warranty had expired.

The district court entered an Order in which it also made "findings" and ordered that the complaint and counterclaim be dismissed with prejudice.

Both parties agree that the Order is not supported by "findings" in the decision Order. "It is fundamental that a judgment cannot be sustained on appeal unless the conclusion upon which it rests finds support in one or more findings of fact." *Thompson v. H. B. Zachry Co.*, 75 N.M. 715, 716, 410 P.2d 740 (1966). No findings of fact were made.

Defendant seeks an alternative route to affirmance via *Sears v. Board of Trust. of Anton Chico Land Grant*, 83 N.M. 372, 492 P.2d 643 (1972). In *Sears*, the trial court did *not* make, sign and file a decision as required by Rule 52(B)(1)(a), (d) Rules of Civil Procedure. On appeal, the Board contended that findings *adopted by reference* could not be considered by the Supreme Court. Omitting citations, the court said:

*... Normally we would remand the cause to the trial court to make, sign and file a proper decision as required by the rule.* However, it is apparent the trial judge read and considered the requested findings. He rejected one of the requests, *but adopted all the others.* In view of this consideration and adoption of the requests by the trial judge, the fact that he has retired as a district judge, *and the further fact that appellants made no effort to file requests or to call the now claimed error to the attention of the trial court,* we are not inclined to remand the case for the entry of a proper decision by some other judge unfamiliar with the case, *or disregard the findings actually adopted* and made by the trial judge. [Emphasis added.] [Id. 375, 492 P.2d 643.]

*Sears* is not an alternative. The trial court did adopt all findings but one requested by appellee. The normal procedural method was abandoned due to the retirement of the district judge. The two cases are not comparable.

In the instant case, Lieb did request findings. The trial court marked "Refused" on 116 requested findings of plaintiffs. It marked "Given" on 5 of the 16 requested findings of defendant, none of which appear in its "decision." In this state of the record, it was the duty of opposing lawyers to file motions with the court to seek clarification of the decision rendered, proper findings of fact and a hearing with a reporter present. A report of all proceedings in the trial court are important in the appeal because we are bound by the record.

This case should be remanded to the district court. The transcript of the record and proceedings should be reviewed by the court to refreshen itself upon the evidence and facts. A hearing should be held. If opposing lawyers believe that any corrections, additions or modifications are necessary, motions should be presented to the court and rulings made. Suggestions and arguments of lawyers should be heard and recorded, none having been had at the close of the case. After having made a decision

based upon ultimate facts, a proper judgment should be entered.

"Refreshment of memory by a court might take on the color of certainty if the testimony was read. If not read, experience teaches that a decision based upon memory alone is poor judgment and should be avoided." *Weiss v. Hanes Mfg. Co.,* 90 N.M. 683, 687, 568 P.2d 209 (Ct.App.1977). "Requested findings and conclusions should not slip through the judge's fingers like an eel." *Ortiz v. Lane,* 92 N.M. 513, 516, 590 P.2d 1168 (Ct.App.1979).

Absent any findings of fact, the judgment entered was invalid. Absent a judgment, this Court cannot resolve any issues of fact and law not before this Court. We do not yet know what the issues of fact are. We depend upon findings of fact and a challenge thereof. When this event occurs, we can determine whether the judgment should be affirmed or reversed.

**B.** *Other points raised should await further proceedings.*

Plaintiffs claim the trial court erred in refusing to adopt their requested findings and that the finding of the trial court regarding revocation is not supported by substantial evidence. In effect, plaintiffs ask for judgment in this appeal. To render judgment, we must review the evidence to determine whether 106 requested findings are supported by undisputed testimony. In its present state, we must view the evidence and inferences drawn therefrom most favorable to defendant. In view of the trial court's "findings" that "the evidence was equally balanced," we must await a decision of the Court.

This appeal should not be determined piecemeal. There are many and varied issues of fact and law. Unfortunately, the district court took the wrong road at the end of the trial.

Payment of costs should await a second appeal.