**SPEAKMAN COMPANY, Plaintiff,**

v.

**The HARPER BUFFING MACHINE COMPANY, INC., Defendant.**

**Civ. A. No. 82–730 MMS.**

United States District Court,
D. Delaware.

March 20, 1984.

Paul E. Crawford, and Henry F. Gallagher, Jr., Connolly, Bove, Lodge & Hutz, Wilmington, Del., for plaintiff.

Michael B. Joseph, Priestley & Joseph, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This lawsuit involves the sale of an allegedly defective "buffing" machine. Plaintiff Speakman Company ("Speakman"), a Delaware corporation, manufactures plumbing supplies at a facility in Wilmington, Delaware. Defendant, The Harper Buffing Machine Company, Inc. ("Harper"), is a Connecticut corporation with its principal place of business in East Hartford, Connecticut. Speakman purchased a buffing machine from Harper in the summer of 1980 for use in its manufacture of brass showerheads. The machine was intended to polish Speakman's showerheads and to remove a hexagonal lip created in the manufacturing process. The buffing machine, Speakman alleges, never performed adequately. Plaintiff's five count complaint charges Harper with breaching various express and implied warranties and with negligence based on those same breaches.

Harper has moved for summary judgment on three grounds: first, that Speakman failed to give Harper timely notice of Harper's alleged breach; second, that the Court lacks personal jurisdiction over Harper under the Delaware long arm statute and the due process clause of the United States Constitution; and third, that Speakman failed to join an indispensable party to the litigation. The Court finds none of these grounds meritorious and will deny defendant's summary judgment motion.

### Personal Jurisdiction

Harper's objection on personal jurisdiction grounds can be dismissed in short order.

The jurisdictional facts are uncontested. Harper employed a sales engineer, Barry McGrath, who was assigned responsibility for soliciting business from the Pennsylvania, Maryland and Delaware markets. (Doc. 32, McGrath Depo. at 7–8). In 1978 McGrath visited Speakman's Wilmington plant. During McGrath's visit Speakman inquired into whether Harper had equipment suitable for finishing Speakman's brass showerhead forgings. McGrath explained that Harper might have such machinery and took with him samples of

Speakman's showerheads for testing at Harper's Connecticut plant.

Some time later Harper completed its tests. On June 8, 1979, Harper mailed to Speakman a formal letter quotation for its "Parker-Matic equipment suitable for removing the hexagonal shaped lip and polishing the OD of the large and small brass showerheads." (Doc. 1, exhibit A). Speakman returned a purchase order to Harper on June 29, 1979. The equipment was delivered to Speakman's plant in late July or early August, 1980. McGrath made several trips to Wilmington during the next few weeks to help Speakman install the machine.

■ Harper's contacts with the State of Delaware exceed the minimum required under the Delaware long arm statute, 10 *Del.C.* § 3104, and under the due process clause of the United States Constitution. 10 *Del.C.* § 3104(c) permits a court to exercise jurisdiction over a non-resident defendant who "transacts any business" or "contracts to supply services or things" in the State of Delaware. Section 3104(c) has been broadly construed so as to confer jurisdiction to the maximum extent permitted by the due process clause. *Moore v. Little Giant Industries, Inc.,* 513 F.Supp. 1043, 1048 (D.Del.1981), *aff'd,* 681 F.2d 806 (3d Cir.1982); *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.,* 505 F.Supp. 777, 780 (D.Del.1980). The due process clause, in turn, permits suit against a non-resident defendant if the defendant maintained such "minimum contacts" with the forum state that the exercise of jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Moore,* 513 F.Supp. at 1048, *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). As in *Pettinaro Construction Co. v. Fries Correctional Equipment, Inc.,* No. 81–468 (D.Del. Aug. 30, 1982), "[t]his is

... a case in which this Court is asked to exercise 'transactional' rather than 'general' personal jurisdiction over [Harper]. The claim in suit arises out of a transaction entered in by [Harper] within the forum state and the absence of a regular course of doing business here is, accordingly, not controlling." *Id.,* slip op. at 4.[1] In this case, where the defendant has solicited business from the plaintiff within the State of Delaware by sending a sales agent to plaintiff's Wilmington plant and by mailing a written offer to plaintiff's Wilmington address, it is axiomatic that Harper "purposefully availed itself of the privilege of conducting activities within the state," *Hanson v. Denkla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), and thus could "reasonably anticipate being haled into court" in Delaware. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This District has exercised jurisdiction over defendants with far less contacts with Delaware than the defendant in this case. Jurisdiction has been based on a single sales contract where goods were shipped into Delaware even though *no* solicitation occurred in the state. *See Moore,* 513 F.Supp. at 1045, 1050. Jurisdiction has been based on a single telephone call and letter mailed to Delaware submitting a bid for a subcontract. *See Pettinaro,* slip op. at 1–2. Here, where defendant solicited business in Delaware and where its employee made several trips to plaintiff's Delaware plant, the sufficiency of defendant's contacts within the state of Delaware cannot seriously be doubted.

**Notice of Breach of Warranty**

Harper argues that Speakman failed to notify Harper of its breach of warranty claims until more than one year after discovering the breach and that Speakman's claims are therefore barred under UCC

---

**1.** Plaintiff presented evidence that Harper has been conducting business in Delaware for some time and that Harper solicits business throughout the country in trade magazine advertisements. The Court need not decide whether these contracts would be sufficient to provide jurisdiction in a non-transactional cause of action.

§ 2–607(3)(a).[2] Section 2–607(3)(a) provides:

> [T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

It is uncontested that Harper's sale was governed by the warranty clause printed on the reverse side of Harper's June 8 quotation letter. The warranty provides:

> The company warrants its equipment against defective material and workmanship for a period of one year from the date of invoice, this warranty being limited to repair or replacement in our factory or [of?] equipment proving defective. No other warranty is made or is any to be implied. The company cannot assume responsibility extended to equipment not of its manufacturer. Under no circumstances shall the company be liable for loss of profits or consequential or other damages.

(Doc. 1, exhibit A). Harper does not contend that its machinery's alleged defects manifested themselves outside this one-year warranty provision. It does argue, however, that it never received timely notice of those defects.

Resolution of the timeliness question requires a determination of what events constituted "notice" in this case within the meaning of section 2–607. Deposition testimony of two principal actors, Harper's president, Richard Gillott, and its sales agent, McGrath, suggest strongly that Harper knew of Speakman's dissatisfaction with the buffing machine from the time it was installed until the time this suit was filed. Within a month after McGrath completed his set-up of the machine, Speakman complained that the high-speed sanding belt designed to remove the hexagonal lip from Speakman's showerhead forgings were ripping and shredding after processing only a few showerheads. McGrath returned to Wilmington several times in an effort to correct the belt wear problem but was unsuccessful. Six to eight months after installation, with the belt-wear problem still unresolved, Speakman advised Harper that it could not use the machine and requested that Harper repurchase it. Harper agreed at that time to repurchase the "first station," but Speakman responded that it would accept that plan only if an alternative means for removing the lip could be located. Six months to a year later, with no alternatives found, Speakman demanded a refund in writing.

Harper contends that the first notice for purposes of section 2–607 occurred when this final demand letter was mailed in 1982. The notice requirement of section 2–607, however, is not so formalistic. The quality of notification need not achieve perfection. As explained in the official comments:

> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2–605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's

---

**2.** The parties agree that Connecticut law governs this transaction. Delaware and Connecticut have adopted identically worded versions of UCC § 2–607. *See* 6 *Del.C.* § 2–607 and Conn. Gen.Stat. § 42a 2–607.

Harper vaguely alluded in its opening brief that Speakman's claim was barred not only under UCC § 2–607 but also under § 2–725 because, one is forced to infer, Harper believed its one-year limited warranty created a one-year statute of limitations. Speakman's answering brief concisely disposed of this argument: a

one-year warranty does not act "as a jurisdictional time limit for filing an action." (Doc. 40 at 16, *quoting Lieb v. Milne,* 95 N.M. 716, 625 P.2d 1233, 1237 (N.M.App.1980)). In its reply brief Harper apparently abandoned reliance on § 2–725. (*See* Doc. 43 at 1–3). When questioned at oral argument, counsel for Harper again vaguely hinted that Speakman should have acted within one year by virtue of the one-year warranty under penalty of being statutorily barred. This contention has no merit.

rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

UCC § 2–607, official comment 4.[3] *See also* UCC § 1–201(30) (Notice under the UCC is given "by taking such steps as may be reasonably required to inform the other in the ordinary course.").

▇▇▇ The courts applying section 2–607 accordingly have not insisted on any particular method or content of notification. As the Connecticut supreme court has explained, the notice must only be "sufficient to alert the [seller] to the possibility that it might be answerable to the [buyer] for breach of contract and of warranty." *Stelco Industries, Inc. v. Cohen*, 182 Conn. 561, 438 A.2d 759, 761–62 (1980). The parties in this case agree that three policy reasons underlie the notice requirement of section 2–607: "to enable the seller to make adjustments or replacement or to suggest opportunities for cure; 2) To enable the seller to prepare for negotiation or litigation; and 3) To give the seller peace of mind from stale claims." *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 814 (6th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979). So long as notice is given in a time and manner sufficient to satisfy these policies, a claim for breach of contract or warranty should not be barred under section 2–607.

▇▇▇ The Court cannot hold that, as a matter of law, Speakman failed to give such notice in a timely fashion. There are sufficient facts in the record to support an inference that Harper was informed soon after installation that its machine was not working to Speakman's satisfaction. There is even stronger evidence to support an inference that Harper was told six to eight months after the installation that Speakman considered the machine unusable. This course of communication, if proved at trial, would satisfy the purposes of section 2–607.[4] It would have provided Harper with an opportunity to make adjustments, to replace the machine, or to suggest opportunities for cure; it would have enabled Harper to prepare for negotiation or litigation; and it would have given Harper notice of a fresh claim.[5] The first notice thus would not have occurred, as Harper argues, in 1982. Harper does not contest that if notice was given only six to eight months after installation, the notice would have been timely.

▇▇▇ Harper does contend, however, that even if notice was given at that early date, the six-month to one-year period of silence following its offer to repurchase the first station was reasonably interpreted by Har-

**3.** Professors White and Summers adopt a far reaching interpretation of this official comment, stating that "a letter containing anything but the most exaggerated encomiums" would satisfy the drafters intent under § 2–607(3)(a). J. White & R. Summers, *Handbook on the Law of the Uniform Commercial Code* (2d ed. 1980) at 425. White and Summers also observe, with less exaggeration, that notice under § 2–607 would be sufficient if "scribbled ... on a bit of toilet paper." *Id.*

**4.** A few courts have held, at least where two merchants are involved, that § 2–607 requires notice of a "breach" and not merely expressions of general dissatisfaction with the transaction. *See Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d at 825–36; *Eastern Air Lines v. McDonnell Douglas Corp.*, 532 F.2d 957, 971–72 (5th Cir.1976); 4 *Anderson on the UCC* § 2–607:43, at 147 (3d ed. 1983). This interpretation of § 2–607 imposes a higher duty than that which seems to be required under the official comment to § 2–607. *See* pp. 276–277 *supra*. It is unclear whether Connecticut would follow the more restrictive reading of § 2–607, but that issue need not be resolved. Speakman told Harper that it wanted Harper to repurchase the machinery because the buffer was unsatisfactory; this communication would meet even the harshest notice requirement under § 2–607. Speakman's comments to Harper should have put Harper on notice "that the transaction [was] claimed to involve a breach." *Eastern Air Lines*, 532 F.2d at 976.

**5.** Harper argues that Speakman gave no notice until May, 1982, of the breach alleged in Speakman's second count regarding stomach and intestinal discomfort from the Liquid Compound Spray System. There is insufficient record evidence to decide the reasonableness or timeliness of Speakman's notice of that claim.

per as a signal that Speakman became satisfied with the buffing machine's performance. A new notice, Harper argues, was thereafter required. This position cannot be accepted on summary judgment. There is considerable record evidence, including deposition testimony by McGrath and Gillott, suggesting that the period of delay resulted from the efforts of both parties to seek a solution to what they continuously realized was an unsatisfactory situation. If such proves to be the case at trial, then the long period of silence would be consistent with Speakman's earlier notice of breach and would not have necessitated a repetition of the notice.[6]

The Court thus cannot say as a matter of law that Speakman failed to give sufficient timely notice to Harper of its alleged breaches. The question of timeliness and adequacy of notice is a factual question which can be decided as a matter of law only if the undisputed facts and the inferences that can be drawn therefrom permit only one interpretation. See *Eastern Air Lines v. McDonnell Douglas Corp.*, 532 F.2d 957, 973 (5th Cir.1976); *Pritchard v. Liggett & Meyers Tobacco Co.*, 295 F.2d 292 (3d Cir.1961) (applying Uniform Sales Act); *Hoffman's Double Bar Pine Nursery v. Fyke*, 633 P.2d 516 (Colo.Ct.App. 1981), 2 R. Anderson, *Uniform Commercial Code* § 2–607–24 (2d ed. 1971). Resolution of that question must be reserved for trial.

### Dismissal for Non-Joinder of Indispensable Party

Harper contends that Speakman's bank, the Philadelphia National Bank ("PNB"), is an indispensable party to this action and

that the case should therefore be dismissed under Fed.R.Civ.P. 19(b).

Harper, however, has not demonstrated, and has submitted no evidence, that PNB could not be joined voluntarily or involuntarily under Rule 19(a). Dismissal under Rule 19(b) is proper only if a person "cannot be made a party" under Rule 19(a). Fed.R.Civ.P. 19(b). See 3A *Moore's Federal Practice* ¶ 19.052[2], at 19–91, 19–92 (2d ed. 1982).

In addition, even if a party cannot be joined, dismissal is proper only if "in equity and good conscience the action should [not] proceed among the parties before" the court. Fed.R.Civ.P. 19(b). Rule 19(b) lists four factors for consideration:

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

These factors have been virtually ignored in Harper's briefs.[7] The court will not substitute as Harper's advocate. It should suffice to say that no reasons are apparent on this record why the case should not proceed without PNB. PNB was not a party to the sales contract between Speakman and Harper. It obtained title to the buffing machine only because it financed Speakman's purchase through a leasing arrangement—a leasing arrange-

---

6. Harper relies solely on *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813. In *Standard Alliance*, however, after repair efforts by the defendant were completed, the plaintiff failed to communicate that the repairs were defective. *Id.* at 827. The court held that earlier notice of a defect could not carry over to a "subsequent related, but distinct, breach." *Id.* In the case at bar, Harper admitted at argument, the parties were perfectly aware that all repair efforts failed to cure Speakman's objections and that Harper knew Speakman was still unhappy following Harper's repair efforts.

7. Harper's only argument is that if Speakman were to lose in this case and subsequently assign its interest in the buffing machine to a third party, Harper might be dragged into a suit by the assignee against Speakman and PNB. This hypothetical is unconvincing. The imagined assignee would take the buffing machine subject to all of Harper's defenses against Speakman. Harper might, in addition, be able to assert a collateral estoppel defense in subsequent litigation.

ment that merely served as a secured lending device.[8] Thus, PNB's interest in this litigation is merely that of a third party with a security interest in goods which are subject to a warranty dispute. Harper has pointed to no cases, and the Court has found none, requiring dismissal for failure to join a party with a security interest in defective goods. *See generally Armour-Dial, Inc. v. Alkar Engineering Corp.*, 469 F.Supp. 1193 (E.D.Wis.1979); 3A *Moore's Federal Practice* ¶ 19.09[6] (2d ed. 1982). Although the court might later be powerless to order rescission if PNB, the title holder, is not a party to this action, the Court's inability to order that specific relief would not render it unable to protect the interests of either Speakman or Harper since money damages could fully substitute for rescission. *See* 3A *Moore's Federal Practice* ¶ 19.072[2], at 19–168 (where specific performance or rescission would result in prejudice to an absentee, money damages may avoid objection to non-joinder on grounds of prejudice).

An order will issue denying Harper's motion for summary judgment.

---

**8.** Speakman makes monthly payments to Harper over a fixed term and, at the conclusion of that term, must purchase the buffing machine for $1.00. (Doc. 41, Affidavit of David C. Barley at 3). Speakman, not PNB, has taken depreciation deductions and investment tax credit on its federal tax returns. (*Id.*). *See also* UCC § 1–201(37) (agreement that upon compliance with lease, lessee shall become or has an option to become owner of property for no additional consideration or for nominal consideration makes lease one intended for security).