811 P.2d 899

**C.E. ALEXANDER & SONS, INC., a New Mexico corporation, Plaintiff–Appellee,**

v.

**DEC INTERNATIONAL, INC., a Wisconsin corporation, Dairy Equipment Company, a subdivision of DEC International, Inc., a Wisconsin corporation, Defendants–Appellants.**

No. 18983.

Supreme Court of New Mexico.

May 13, 1991.

As Amended on Denial of Rehearing June 12, 1991.

Atwood, Malone, Mann & Turner, P.A., Steven L. Bell, Susan Zeller, Roswell, Madden & Strate, P.C., Brice A. Tondre, Wheat Ridge, Colo., for defendant-appellant DEC Intern.

Templeman & Crutchfield, C. Barry Crutchfield, Lovington, Davies Pearson, P.C., Tacoma, Wash., for plaintiff-appellee.

## OPINION

BACA, Justice.

Defendant DEC International, Inc. (DEC) appeals the judgment of the district court entered after a jury trial in favor of plaintiff-appellee C.E. Alexander & Sons, Inc. (Alexander) on its breach of implied warranties claims. We affirm.

In 1982, Alexander, a dairy business, began efforts to upgrade the dairy and decided to equip its barn with milking equipment manufactured by DEC. New Mexico Dairy Equipment Co., an authorized dealer for DEC that sold, installed, and serviced dairy farm equipment, entered into a contract with Alexander for the DEC milking equipment, which was installed in Alexander's barn.

Subsequently, Alexander entered into an arrangement with Buster Goff to trade registered dairy cows for unregistered ones, with Goff retaining a fifty percent interest in the registered cows. This partnership contemplated Alexander managing the cows and receiving revenues from milk production. Upon sale of the cows, Goff would receive half of the proceeds.

In the winter of 1983–1984, Alexander's herd experienced an increase in mastitis, an udder infection that is normally present to a certain degree in dairy herds. .

Alexander brought suit. The jury found that DEC breached implied warranties of merchantability and fitness for a particular purpose and that the breaches proximately caused damage to Alexander, and it awarded damages of $242,000. The court then awarded prejudgment interest of $105,485.30.

DEC appeals, asserting that: (1) Goff was a necessary and indispensable party to this lawsuit, and therefore, the court was without jurisdiction; (2) the court erred in presenting the breaches of implied warranties issues to the jury; (3) the court erred in its ruling that DEC could not disclaim warranties as a matter of law, and (4) the damage award was based on speculation and conjecture.

## I. NECESSARY AND INDISPENSABLE PARTY

The issue confronting us is whether Goff, as Alexander's partner and as owner of an interest in the herd infected with mastitis, was an indispensable party to this litigation under SCRA 1986, 1–019 (Rule 19). The joinder issue was not raised below; we have held, however, that this issue may be raised for the first time on appeal. *Sellman v. Haddock,* 62 N.M. 391, 403, 310 P.2d 1045, 1053 (1957), *overruled on other grounds, Safeco Ins. Co. v. United States Fidelity and Guar. Co.,* 101 N.M. 148, 679 P.2d 816 (1984); *see* 3A J.W. Moore, *Moore's Federal Practice* ¶ 19.19–1 (2d ed. 1990). DEC argues that Goff's interests inextricably were tied with Alexander's claim and asserts that the prejudice to Goff's interests coupled with his nonjoinder creates a jurisdictional defect, or, alternatively, requires a remand to factor out Goff's damages. Although not couched in terms of the balancing approach mandated by Rule 19, basically DEC asks us to treat this matter as would a trial court.

In *Holguin v. Elephant Butte Irrigation District,* 91 N.M. 398, 401, 575 P.2d 88, 91 (1977),[1] we accepted with reservations a principle decided under our early joinder rule to the effect that failure to join an indispensable party is a jurisdictional defect. The current rule articulates a balancing test to determine whether a suit can continue without a party, and it leaves to the court's discretion the performance of that test. *See Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70 (2d Cir.1984) (Rule 19(b) gives district court substantial discretion to weigh factors and determine whether a suit can continue without joinder, *i.e.* it involves more of a factual than legal determination, and review is limited to abuse of discretion); *Cloverleaf Standardbred Owners Ass'n v. National Bank,* 699 F.2d 1274, 1277 (D.C.Cir.1983). Under the current rule, we do not consider the test of indispensability to be jurisdictional, and we hereby overrule precedent to the contrary. *See Jim Walter Corp. v. FTC,* 625 F.2d 676, 681 (5th Cir.1980); *Kansas City S. Ry. v. Great Lakes Carbon Corp.,* 624 F.2d 822, 824 n. 2 (8th Cir.) (view that failure to join indispensable party is jurisdictional against weight of authority), *cert. denied,* 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980); *see generally* 3A Moore, *supra,* ¶ 19.01[5.–9] (joinder rules alone do not create jurisdictional problems, although reference must be made to other jurisdictional rules).

When a Rule 19 claim is raised for the first time on appeal, the analysis differs from when it is raised before a judgment is entered. *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (quoted with approval in *Holguin,* 91 N.M. at 401, 575 P.2d at 91). *Patterson* effectively articulates the reasons why an

---

**1.** Citing *Perez v. Gallegos,* 87 N.M. 161, 530 P.2d 1155 (1974); *Richins v. Mayfield,* 85 N.M. 578, 514 P.2d 854 (1973); *State ex rel. Clinton Realty v. Scarborough,* 78 N.M. 132, 429 P.2d 330 (1967); *C. de Baca v. Baca,* 73 N.M. 387, 388 P.2d 392 (1964); *State Game Comm'n v. Tackett,* 71 N.M. 400, 379 P.2d 54 (1962); *Sellman v. Haddock,* 62 N.M. 391, 310 P.2d 1045 (1957), *overruled on other grounds, Safeco Ins. Co. v. United States Fidelity and Guar. Co.,* 101 N.M. 148, 679 P.2d 816 (1984); *Keirsey v. Hirsch,* 58 N.M. 18, 265 P.2d 346 (1953).

appellate court should not resort to the balancing test, relying on concepts of finality, the sanctity of judgments, and the limited role of appellate courts. *See* 390 U.S. at 109–12, 88 S.Ct. at 737–39.

To those reasons, we elaborate upon or add several with special relevance to the instant case. First, when a joinder question is raised before or at trial, the court can entertain evidence regarding the missing party. That is not our role on appeal, and we do not have the appropriate tools at our disposal to determine the factual predicate of a party's indispensability. This problem aptly is brought home in this case, where the parties do not agree whether Goff even was involved with Alexander during the relevant time period. In some cases a remand may be in order to allow the trial court to engage in the appropriate balancing. If the question then returns to us, we would be presented with a factual record and an exercise of discretion to facilitate review. As the remainder of this opinion will clarify, this case does not require such a resolution. Second, at trial, when a court normally should consider joinder in the first instance, no judgment yet has been entered. When a case reaches the appellate level, however, the court has presided over a full trial and the jury has rendered a verdict.

■ DEC, in its alternative requests for relief, has pointed to two different effects of the nonjoinder. By asking us to remand for a factoring out of Goff's damages, DEC asks us to protect *its* interests by not requiring it to pay to Alexander the damages alleged to have been incurred by Goff, when potentially it may be subject to later suit initiated by Goff. By asking us to vacate the judgment because Goff was indispensable to this suit, DEC argues, in essence, that the prejudice *to Goff* by nonjoinder is so great that the judgment cannot stand.[2]

The information regarding Goff and his role was available to DEC before trial; Goff was a witness for the defense. To perform a Rule 19 analysis now would be to give DEC a technical escape from an adverse judgment when it had ample opportunity to bring the issue before the district court. It also would require us to discard a final and otherwise valid jury verdict. Under these circumstances, we hold that prejudice to DEC's interests created by Goff's nonjoinder is waived as a ground to vacate the judgment. *See Patterson*, 390 U.S. at 110, 88 S.Ct. at 738; *United States v. Sabine Shell, Inc.*, 674 F.2d 480, 483 (5th Cir.1982) (if parties' failure to join creates a dilemma, "it is one of their own making, one that they could have avoided by joining [the missing parties] earlier in this litigation"); *see generally* 3A Moore, *supra*, ¶ 19.19–1.

The relevant issue on appeal is whether failure to join Goff is prejudicial to *his* interests to the extent that we should vacate the existing judgment. If the trial court had heard the issue, its analysis would "consider the extent to which the judgment may 'as a practical matter impair or impede his ability to protect' his interest in the subject matter." *Patterson*, 390 U.S. at 110, 88 S.Ct. at 738 (quoting Rule 19(a)). On appeal, however, speculation is not required—the judgment exists, and it in fact may not affect the interests of the unjoined party. *Id.* at 111, 88 S.Ct. at 738. Under the appropriate circumstances, when a judgment adversely and prejudicially affects the interests of the absent party— "who of course had no opportunity to plead and prove his interest below"—on appeal the court should protect that party's interest. *Id.* When making this determination, however, we must consider whether, in a *practical* sense, the judgment prejudicially affects the absent party. *Jeffries v. Georgia Residential Fin. Auth.*, 678 F.2d 919, 928 (11th Cir.), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).

We hold that Goff was not prejudiced by his nonjoinder. Goff knew of the litigation; he even appeared as a witness. He was aware of potential claims he might have

---

**2.** This argument is framed as a request that per se a partner must bring suit as a partner, not an individual.

had, yet chose not to participate and appears to have indicated expressly his desire not to pursue legal redress. *Cf. Fetzer v. Cities Serv. Oil Co.*, 572 F.2d 1250 (8th Cir.1978) (Rule 19 does not require dismissal of action when nonjoined party present throughout entire litigation and no objection made until after judgment). We find no reason to vacate the judgment below and to force the parties and the court system to endure further and repetitive proceedings when Goff himself, although adequately presented with the opportunity to assert his interests, has chosen not to do so.

## II. IMPLIED WARRANTIES

 DEC asserts the court erred when it submitted the questions of both the implied warranty of fitness for a particular purpose and the implied warranty of merchantability to the jury, contending that as a matter of law the evidence failed to establish the requisite elements, *i.e.*, Alexander did not meet its burden of proof on the elements of the warranties. It does not, however, indicate that it moved for a directed verdict or a judgment notwithstanding the verdict and, thus, preserved the asserted error for review, *see* 5A Moore, *supra*, ¶ 50.12, although its argument appears to be that a motion for directed verdict should have been granted. On the other hand, however, Alexander has not raised as a defense that the alleged error was not preserved. We will apply the standard of review applicable to a review of denial of a directed verdict.

It is the province of the trial court to determine all questions of law, including the legal sufficiency of any asserted claim or defense. If the evidence fails to present or support an issue essential to the legal sufficiency of an asserted claim, the right to jury trial disappears. It is fundamental that the evidence adduced must support all issues of fact essential to the maintenance of a legally recognized and enforceable claim. Otherwise, there can be no basis in fact for the claim, and it must be dismissed as a matter of law.

*American Employers' Ins. Co. v. Crawford*, 87 N.M. 375, 376, 533 P.2d 1203, 1204 (1975) (citations omitted).

 On appeal, we view the evidence in a light most favorable to Alexander as the party resisting the motion and indulge every reasonable inference to support it, ignoring conflicts in the evidence unfavorable to Alexander. *See Archuleta v. Pina*, 86 N.M. 94, 95, 519 P.2d 1175, 1176 (1974); *Poorbaugh v. Mullen*, 99 N.M. 11, 18, 653 P.2d 511, 518 (Ct.App.), *cert. denied*, 99 N.M. 47, 653 P.2d 878 (1982).

A. *Warranty of Fitness for a Particular Purpose.*

 NMSA 1978, Section 55–2–315 creates an implied warranty that a good is fit for a particular purpose "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."

DEC contends that Alexander purchased the milking machines for their ordinary use and not for a particular purpose, and thus, no warranty that the machines were fit for a particular purpose could be implied. Official comment (1) to Section 55–2–315 notes: "Whether or not this warranty arises in any individual case is basically a question of fact to be determined by the circumstances...." A seller's actual knowledge of the particular purpose or of the buyer's reliance is not required, as long as the circumstances indicate that a seller has reason to know of the buyer's particular purpose and of his reliance on the seller. *Id.* Comment (2) further indicates:

A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know

that a particular pair was selected to be used for climbing mountains.

A contract may of course include both a warranty of merchantability and one of fitness for a particular purpose.

The record bears out DEC's assertion that the machines were made to milk cows, and Alexander used the machines for that purpose. The crux of this issue, however, is whether Alexander intended to use the machines for a particular milking procedure somewhat unique to its operation, and whether DEC had reason to know of such a purpose. In other words, were these "shoes for walking" or "shoes for climbing mountains," and would a reasonable seller be aware of Alexander's particular needs? *See Lieb v. Milne,* 95 N.M. 716, 625 P.2d 1233 (Ct.App.1980).

Sufficient evidence was presented to warrant presentation of this issue to the jury. Alexander presented evidence that the milking machines were to be used on a double sixteen milk meter system. Thus, the particular purpose for which the machines were to be used was not simply to milk cows, but also to milk them effectively using that particular system. Evidence also was presented that the seller was aware of Alexander's particular needs. That was sufficient to create a jury question on the issue.

DEC also contends that Alexander did not rely on the seller's skill or judgment in selecting the milking apparatus. *See, e.g., International Paper Co. v. Farrar,* 102 N.M. 739, 700 P.2d 642 (1985). It is not dispositive that DEC did not specially manufacture this product for Alexander, or that Alexander may have shopped with different sellers before deciding to buy from DEC and may have developed a certain level of knowledge regarding various systems. Alexander presented evidence that DEC represented to it that the machinery would meet the necessary milking requirements for Alexander's double sixteen system. This was sufficient to present the reliance issue to the jury. Thus, we hold that the evidence presented created issues of fact regarding both whether the machine was purchased for a particular pur-

pose—to milk effectively cows on a double sixteen system—and whether Alexander relied on DEC's judgment and skill in deciding to purchase the system.

**B.** *Warranty of Merchantability.*

■ The requirements for a warranty of merchantability are set forth in Section 55-2-314. DEC argues that Alexander failed to carry its burden to prove that the milking equipment was not fit for its ordinary purpose—to milk cows—and did not pass without objection in the trade. Sufficient evidence, however, was presented to warrant submission to the jury on this issue. That evidence included testimony regarding failure of various components of the system that resulted in injury to the cows. If the ordinary purpose of the machines was to milk cows, evidence to the effect that the machines could not milk cows without causing disease creates a factual question regarding breach of the warranty of merchantability. *See Farrar,* 102 N.M. at 742, 700 P.2d at 645; *Lieb,* 95 N.M. at 719, 625 P.2d at 1236.

The jury instruction propounded on the warranty of merchantability stated:

A supplier breaches the implied warranty of merchantability:

(1) If the products are defective and are not fit for the ordinary purposes for which such products are used; or

(2) If the products do not conform to the promises or statements made by the seller.

DEC did not offer its own instruction on this issue, and thus this instruction is the law of the case. *See State v. Southerland,* 100 N.M. 591, 673 P.2d 1324 (Ct.App.), *cert. denied,* 100 N.M. 689, 675 P.2d 421 (1983) (instruction not objected to becomes law of case). DEC contends, however, that, as to part (2), the jury determined that DEC's express promises had not been breached, and that, as to part (1), the jury answered a special verdict stating that the equipment was not defective. It concludes that there was no basis for the finding of liability on this warranty issue. The question answered by the special verdict, however, was: "Did the defendants supply the milking

meter system in a defective condition *that created an unreasonable risk of injury to dairy cattle by its use?"* (Emphasis added.) By its negative answer, the jury did not find that the products were defective and not fit for their ordinary purposes. The quandary posed by DEC was not, in fact, present.

## III. DISCLAIMERS

The court below ruled that, as a matter of law, DEC had not disclaimed the implied warranties. DEC asserts that a factual question had been raised regarding disclaimer and claims that the court's refusal to allow the issue to go to the jury was in error.

Section 55–2–316(2) states: "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." Section 55–1–201(10) defines "conspicuous" as a term or clause that "is so written that a reasonable person against whom it is to operate ought to have noticed it[.] ... Whether a term or clause is 'conspicuous' or not is for decision by the court."

■ One purpose of the requirement that the disclaimer be in writing and conspicuous is to insure that the disclaimer of implied warranties is bargained for and forms part of the agreement. *See* § 55–2–316 comment 1; *cf. Deaton, Inc. v. Aeroglide Corp.,* 99 N.M. 253, 657 P.2d 109 (1982) (disclaimer effective where contract specifically referred buyer to conditions on back of form); *see generally* 67A Am. Jur.2d *Sales* § 826 (1985) ('limitation or disclaimer of warranties will be given effect only if it formed part of the basis of the bargain when the sales contract was entered into'). The disclaimer at issue was contained in a warranty card; the evidence presented did not create a jury issue regarding the disclaimer because it did not support a conclusion that Alexander was aware of the disclaimer when he signed the purchase agreement. Simply because he subsequently used the express warranty does not create an inference he knew of the disclaimer. *See Van Den Broeke v. Bellanca Aircraft Corp.,* 576 F.2d 582, 584 (5th Cir.1978) (disclaimer on warranty card delivered after sale not effective).

We affirm the decision to disallow the disclaimer as a matter of law.

## IV. DAMAGES

■ DEC moved for a directed verdict arguing that the proof of damages was speculative. DEC asserts the motion should have been granted, because: (1) Alexander relied on unsupported, inconclusive estimates of damages, and (2) Alexander claimed damages based on the diminution in value of cows partially owned by Goff. As to the second issue, we already have considered it in the context of our discussion of Rule 19. The facts regarding Goff and his partnership are not clear. Nonetheless, DEC could have prevented its potential double liability by bringing the question of joinder to the attention of the trial court. As we noted, its failure to do so resulted in its waiver of the argument on appeal that it was prejudiced by Goff's absence. To the extent that DEC's assertion goes to the calculation of damages rather than prejudice from nonjoinder, our review of the record indicates substantial evidence upon which the jury could determine that Goff did not sustain injury and that all of the damages accrued to Alexander.

■ DEC also contends that Alexander relied on unsupported and inconclusive damage estimates, although accurate information was available. It is within the province of the jury to determine the proper amount of damages. *Hood v. Fulkerson,* 102 N.M. 677, 699 P.2d 608 (1985). We view DEC's argument as a claim that there was insufficient evidence to support that verdict.

■ DEC relies on *Gulf Refining Co. v. Etcheverry,* 85 N.M. 266, 511 P.2d 752 (Ct.App.), *cert. denied,* 85 N.M. 639, 515 P.2d 643 (1973). The posture of that case easily distinguishes it from the case at bar.

As noted in *Etcheverry*, it is not the role of an appellate court to reweigh the evidence; it only must determine whether substantial evidence supports the verdict while indulging all reasonable inferences in support of the judgment and viewing the facts most favorable to the appellee. *Id.* at 267, 511 P.2d at 753. In *Etcheverry*, the request for damages was denied at trial because of a failure of proof, whereas in the present case the jury awarded damages. Alexander's calculations of economic loss were not speculative as were those rejected in *Etcheverry*. Even if they were, we would affirm nonetheless, the distinction being that the fact finder in the instant case found the evidence regarding damages credible.[3] On review we find the evidence supports the jury's conclusions.

In accordance with the foregoing, we affirm.

IT IS SO ORDERED.

SOSA, C.J., and ALVIN F. JONES, District Judge (sitting by designation), concur.

3. *Industrial Supply Co. v. Goen*, 58 N.M. 738, 276 P.2d 509 (1954), similarly is distinguished. In that case, the trial court rejected the argument for damages, and we affirmed. Appellant had argued that when the fact of damages has been proved, uncertainty regarding the amount will not bar recovery. *Id.* at 741, 276 P.2d at 511. We found that appellant had not proved with sufficient specificity a quantum of damage when damages were susceptible to proof with approximate accuracy. *Id.* at 741–42, 276 P.2d at 511; *see also Fredenburgh v. Allied Van Lines, Inc.*, 79 N.M. 593, 446 P.2d 868 (1968). In those cases, there was a complete absence of evidence regarding damages, except for completely speculative and subjective testimony. Neither case stands for the proposition that the best evidence or method of proof of damages must be presented to meet plaintiff's burden of proof. In the present case, on the other hand, Alexander presented in-depth evidence—DEC merely disagrees with its basis. The issue went to the jury, however, and we will not disturb its weighing of the evidence.