1998-NMCA-023

954 P.2d 763

**BRANTLEY FARMS, a New Mexico General Partnership, composed of Draper Brantley, Jr., George Brantley, and Henry McDonald, d/b/a McDonald Farm & Ranch, Petitioners–Appellees,**

v.

**CARLSBAD IRRIGATION DISTRICT, Respondent–Appellant,**

and

**Jerry Calvani, et al., Intervenors– Appellants.**

No. 17844.

Court of Appeals of New Mexico.

Jan. 8, 1998.

Stephen S. Shanor, W.T. Martin, Jr., Law Offices of W.T. Martin, Jr., P.A. Carlsbad, for Petitioners–Appellees.

Beverly J. Singleman, Steven L. Hernandez, Hubert & Hernandez, P.A., Las Cruces, for Respondent–Appellant Carlsbad Irrigation District.

Thomas Marek, Marek & Thomas, Carlsbad, for Intervenors–Appellants Calvani, et al.

*OPINION*

APODACA, Judge.

1. Carlsbad Irrigation District (the District) and intervening farmers appeal from a peremptory writ of mandamus directing the District's Board of Directors to release water from two reservoirs within the District to supply irrigation water to Brantley Farms (Petitioners) and other members of the District. The District argues that the district court abused its discretion in issuing the peremptory writ and an earlier alternative

writ of mandamus for two reasons. First, the District contends that the writs are defective and legally insufficient because: (1) the District's duty to distribute water was discretionary, rather than "ministerial" and therefore was not subject to mandamus; (2) the United States, as owner of the reservoirs and administrator of the Carlsbad Project, was an indispensable party absent from the action; and (3) the writs failed to allege sufficient facts establishing Petitioners' clear right to mandamus. Second, the District contends that Petitioners were collaterally estopped from arguing that they were water rights owners legally entitled to mandamus. Petitioners argue that the issues raised by the District are now moot because of lapse of time and because of the District's previous compliance with the district court's writs. Because of our disposition, we need not address issue (3) above. We hold that the issues in this appeal are not moot and that the district court erred in issuing both the alternative and peremptory writs. We therefore reverse.

## I. FACTS

2. Petitioners, as members of the District, raise crops and livestock and claim to be water rights owners in the District. The District is an irrigation district formed in cooperation with the United States under NMSA 1978, Sections 73–10–1 to –47 (1919, as amended through 1981). The District constructs, maintains and operates irrigation works within the District and distributes water to its members.

3. The Santa Rosa and Fort Sumner Reservoirs are upstream reservoirs within the District and are owned by the United States government. The District has no control over the Santa Rosa Reservoir and can only request, through the Bureau of Reclamation, that water be released from the reservoir in accordance with governing federal contracts.

4. Each year, the District's Board of Directors determines the amount of water to be allotted on a pro rata basis to each member of the District for the upcoming crop season. See § 73–10–16. For the 1996 crop year, the Board allotted three acre feet of water to each member. Petitioners maintained that,

due to rainfall in the spring and summer of 1996, approximately 30,000 acre feet of additional water had been captured for storage in the Santa Rosa and Fort Sumner Reservoirs. They requested the release of this additional water from the District. In August of 1996, the Board, at its regularly scheduled monthly meeting, specifically considered the issue of whether the water captured for storage in the Santa Rosa and Fort Sumner Reservoirs should be reserved for the 1997 water supply or released to members as an additional allotment during the 1996 irrigation season. Based on several factors, including existing drought conditions and other options available to Petitioners, including access to supplemental water from irrigation wells and the possibility of purchasing water from members who had not exhausted their 1996 allotment, the Board decided to conserve the water for following year's water supply.

5. After the Board's decision not to release the water, Petitioners filed their civil action against the District giving rise to this appeal. The United States was not made a party to Petitioner's suit. Additional facts are included in our discussion of the issues.

## II. DISCUSSION

### A. Mootness

6. Petitioners initially argue that the appeal should be dismissed because the issues have been rendered moot by the "lapse of time" and by the District's actions in complying with the peremptory writ. Petitioners rely on *Snodgrass v. Tularosa Board of Education*, 74 N.M. 93, 391 P.2d 323 (1964), in which our Supreme Court held that an appeal from the dismissal of a mandamus complaint seeking to compel the school district to tender an employment contract to an employee was moot where the employee voluntarily retired and accepted retirement benefits when the appeal was pending. We consider *Snodgrass* inapplicable to this appeal— the District has not taken any action, such as releasing the water sought by Petitioners, to cause this appeal to become moot as in *Snodgrass*. We agree with the District that an actual controversy exists, notwithstanding the District's efforts to comply with the per-

emptory writ, because the terms of the writ are not limited to the 1996 planting season and the district court specifically ruled that the peremptory writ would remain in effect for future use and consideration by the district court should "the feds decide to get out of the water business."

7. Additionally, Petitioners' contention that the appeal is moot because of the District's "compliance" with the peremptory writ rings hollow in light of Petitioners' own motion and order to show cause why the District should not be held in contempt of court for "failure to comply" with the peremptory writ. The District's attempts to comply with the district court's directives during the pendency of the proceedings below should not be held against it in light of the continuing attempts to dissolve the writs the District has always contended were wrongly issued. After all, any litigant is fully aware that, if its attempts to dissolve a writ fail in the court below or on appeal, it must take precautionary steps to comply with the rulings of the court. We therefore determine that the issues raised in this appeal are not moot and address the merits. *Cf. State ex rel. Blanchard v. City Comm'rs,* 106 N.M. 769, 770, 750 P.2d 469, 470 (Ct.App.1988) (holding that, where petitioner continued his quest for information, appeal from grant of peremptory writ requiring city to release information to petitioner regarding job applicants was not moot even though city rejected all applicants and position was filled).

### B. Collateral Estoppel

■ 8. We first address the District's contention that the trial court erred by refusing to apply the doctrine of collateral estoppel. The District argues that collateral estoppel precluded Petitioners from asserting the right to mandamus based on their alleged ownership of water rights in the Project. In a prior action, *Draper Brantley, Jr. v. Carlsbad Irrigation District,* Fifth Judicial District Court, Eddy County, Case No. CV–91–307–W (the Brantley suit), Petitioners and several other individuals sought an ex parte injunction to enjoin the District from releasing water from the Brantley Reservoir, which is also owned by the Bureau of Recla-

mation and is part of the Project. In that case, the district court granted the District's motion to dismiss, concluding that the plaintiffs' claims depended upon the ownership of water rights in the District and that the district court in *State ex rel. S.E. Reynolds, State Engineer & Pecos Valley Artesian Conservation District v. L.T. Lewis & United States,* Fifth Judicial District, Chaves County, Case Nos. 20,294 and 22,600 (consolidated) (the Lewis suit), had exclusive jurisdiction over the adjudication of such claims. The Lewis suit is an ongoing action involving the adjudication of water rights in the Pecos River Stream System, including the Project. Notwithstanding those other proceedings, the district court in this appeal declined to apply collateral estoppel, finding no identity of parties or issues.

■ 9. The doctrine of collateral estoppel promotes judicial economy "by precluding 'relitigation of ultimate facts or issues actually and necessarily decided in a prior suit.'" *In re Forfeiture of $14,639 in U.S. Currency v. Martinez,* 120 N.M. 408, 414, 902 P.2d 563, 569 (Ct.App.1995) (citing *State v. Bishop,* 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct.App. 1992)) (quoting *Silva v. State,* 106 N.M. 472, 474, 745 P.2d 380, 382 (1987)). For collateral estoppel to apply, the following factors must be satisfied:

■ (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Shovelin v. Central N.M. Elec. Coop., Inc.,* 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993). Once the district court determines that the elements have been met, it must then decide "whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." *Id.* We review the district court's decision for an abuse of discretion. *Id.*

10. We conclude that all of the elements of collateral estoppel have been satisfied in this case. Petitioners, against whom estoppel is asserted, were parties in the Brantley

suit. The cause of action in the present case, a claim for a writ of mandamus requiring the District to release water from two federally owned upstream reservoirs, is different from the cause of action in the Brantley suit, a claim for an injunction to enjoin the District from releasing water from another reservoir owned by the United States. The issue of whether the court in the Lewis suit had exclusive jurisdiction over Petitioners' claim of water rights ownership in the District was actually and necessarily litigated in the prior action. In the Brantley suit, the issue was raised on the District's motion to dismiss for failure to state a claim and was decided by the district court there after "having reviewed the pleadings, heard the arguments of counsel, and having fully considered the matters raised." *See* Restatement (Second) of Judgments § 27 cmt. d (1982) ("When an issue is properly raised by pleadings or otherwise and is submitted for determination, and is determined, it is actually litigated...."). Finally, the issue was necessarily determined, as the dismissal specifically found that the court in the Lewis suit had exclusive jurisdiction over the adjudication of water rights in the Pecos Stream System, including those water rights within the District.

11. We also determine that Petitioners had a full and fair opportunity to litigate the issue in the prior action. This, too, is reflected in the order of dismissal, which recites that the parties were represented by counsel and that counsel had the opportunity to, and did in fact, present their respective arguments on the motion to dismiss to the district court.

### C. Legal Insufficiency Of Alternative Writ And Peremptory Writ

#### 1. The Mandamus Standards

■ 12. Mandamus is a drastic remedy to be invoked only in extraordinary circumstances. *In re Grand Jury Sandoval County*, 106 N.M. 764, 766, 750 P.2d 464, 466 (Ct.App.1988). This Court has recognized that mandamus proceedings are technical in nature. *Id.* The party seeking a writ must first file an application or petition. *Id.* Once an alternative or peremptory writ is issued,

the petition or application disappears and is replaced by the writ itself. *Id.; Laumbach v. Board of County Comm'rs*, 60 N.M. 226, 233, 290 P.2d 1067, 1070 (1955).

■ 13. The party on whom the writ is served may then show cause by filing an answer. NMSA 1978, § 44–2–9 (1884). In determining the legal sufficiency of a writ, the court considers only the allegations in the writ and the answer. *Mora County Bd. of Educ. v.. Valdez*, 61 N.M. 361, 365, 300 P.2d 943, 945 (1956); *see also State ex rel. State Highway Comm'n v. Quesenberry*, 72 N.M. 291, 295, 383 P.2d 255, 257 (1963) ("The issues in mandamus are created solely by and are limited to the allegations of the writ and the answer thereto.").

■ 14. Allegations in the application or petition for a writ of mandamus form no part of the writ and ordinarily cannot be considered in determining the legal sufficiency of the writ. *Sandoval County*, 106 N.M. at 766, 750 P.2d at 466. The writ itself must therefore contain allegations of all facts necessary to authorize relief. *Mora County*, 61 N.M. at 365, 300 P.2d at 945 (citing *State ex rel. Burg v. City of Albuquerque*, 31 N.M. 576, 249 P. 242 (1926)). The writ must "state concisely the facts showing the obligation of the defendant to perform the act, and his omission to perform it...." NMSA 1978, § 44–2–6 (1884). Allegations in the writ should be made as in ordinary actions, and the usual rules applicable in testing the sufficiency of a complaint in an ordinary civil action apply. *Mora County*, 61 N.M. at 365, 300 P.2d at 945. Based on these standards, and for the reasons that follow, we find the alternative writ and the peremptory writ in this case to be legally insufficient.

#### 2. Duty To Perform And Discretion Of The District

■ 15. Petitioners contend on appeal that the District had an absolute and "ministerial" duty to distribute available water to members of the District upon Petitioners' request on the basis of Section 73–10–24. At the hearing to show cause, Petitioners admitted that NMSA 1978, Section 73–9–35 (1919), which was initially relied upon by Petitioners

and cited in the alternative writ, was inapplicable and that Section 73–10–24 was the actual basis of the District's obligation to distribute water. That statute provides:

> In case the volume of water in any canal, reservoir or other works in any district shall not be sufficient to supply the continual wants of the entire district and susceptible of irrigation therefrom, then it shall be the duty of the board of directors to distribute all available water upon certain or alternate days to different localities, as they may in their judgment think best for the interests of all parties concerned.

> Provided: that all water the right to the use of which is acquired by the district under any contract with the United States, shall be distributed and apportioned by the district in accordance with the acts of congress, and rules and regulations of the secretary of interior and provisions of such contract in relation thereto.

Section 73–10–24.

■■■■■■■ 16. Mandamus lies only to force a clear legal right against one having a clear legal duty to perform an act and where there is no other plain, speedy and adequate remedy in the ordinary course of law. *El Dorado at Santa Fé, Inc. v. Board of County Comm'rs*, 89 N.M. 313, 316, 551 P.2d 1360, 1363 (1976). Here, the focus of our inquiry is whether the District had a clear legal duty to perform under Section 73–10–24. Mandamus is appropriate to compel the performance of a statutory duty only when that duty is clear and indisputable. *Witt v. Hartman*, 82 N.M. 170, 172, 477 P.2d 608, 610 (1970).

17. In this case, the alternative writ, the peremptory writ and the answer, to which this Court must look to determine the legal sufficiency of the writs, fail to support any clear legal duty on the part of the District to perform under Section 73–10–24. The alternative writ alleged that the District had a "ministerial" duty to distribute water under Section 73–9–35. As we noted previously, Petitioners later admitted that this statute was improper and that Section 73–10–24, which applies to irrigation districts formed in cooperation with the United States under federal reclamation law and Sections 73–10–1

to 47, were the correct statutory basis of the District's duty. Under Section 73–10–24, a duty to distribute water arises only if it is clear and undisputed that the facts and conditions provided in the statute exist, that is, if "the volume of water in any canal, reservoir or other works in [the District] shall not be sufficient to supply the continual wants of the entire district and susceptible of irrigation therefrom," and if water is "available" for distribution. *See* § 73–10–24.

18. Here, the alternative writ failed to allege the complete factual predicate for a duty to arise under Section 73–10–24. It did not allege that the water volume in any of the District's works was insufficient "to supply the continual wants of the entire district." *See id.* Although the alternative writ alleged that water was "available" for distribution from the Santa Rosa and Fort Sumner Reservoirs, the District specifically denied in its answer that the additional water stored in the reservoirs was "a part of the water available for use by the [District] members." From the answer, it appears that the District's Board exercised its discretion in determining that water was not "available" for distribution when it met for its regularly scheduled monthly meeting in August of 1996 and specifically discussed Petitioners' request for distribution, existing drought conditions and other water options available to Petitioners, including access to supplemental water from irrigation wells and the possibility of purchasing water from members who had not exhausted their allocation for 1996. Upon consideration of all these factors, the Board determined that it was in the best interests of all concerned to conserve the water for the following year's water supply.

19. In those cases in which a clear legal duty to perform was found by the courts, the parties did not dispute the underlying facts giving rise to the public board's duty to perform. *See, e.g., Perea v. Baca*, 94 N.M. 624, 627, 614 P.2d 541, 544 (1980) (finding that, because director of Department of Alcoholic Beverage Control had conceded that statutory requirements for issuing transfer of license had been satisfied, and there was no question concerning the completion of the discretionary acts, mandamus was proper

remedy to compel director's performance of duty to transfer license); *El Dorado,* 89 N.M. at 319, 551 P.2d at 1366 (holding that Board of County Commissioners had clear duty to approve subdivision plat where Board admitted that it had determined that subdivision application complied with statutory requirements). Because Petitioners have not shown all of the facts necessary to give rise to the District's duty to distribute, and there is a dispute as to whether any water was "available" for distribution, we find no clear duty on the part of the District to distribute water. Rights may not be adjudicated between parties by mandamus; it is only a method of enforcing an existing right. *Quesenberry,* 72 N.M. at 294, 383 P.2d at 257.

■ 20. Petitioners argue that their petition and the alternative writ, when read together, contain sufficient factual allegations to state a claim for relief. As we previously stated, however, the law is clear in New Mexico that, except in rare instances, allegations of fact in the petition form no part of the writ and cannot be considered in determining the legal sufficiency of a writ. *Laumbach,* 60 N.M. at 233, 290 P.2d at 1070; *In re Grand Jury Sandoval County,* 106 N.M. at 766, 750 P.2d at 466. The only instance in which allegations in the petition may be considered is when the respondent has answered allegations in the petition as though they had appeared in the writ. *See State ex rel. Burg,* 31 N.M. at 582, 249 P. at 245. That did not occur here.

■ 21. The peremptory writ in this case is also deficient on its face and should have been quashed. A peremptory writ, like an alternative writ, must state all facts necessary to authorize relief. *See* § 44–2–6 (1884); *Mora County,* 61 N.M. at 365, 300 P.2d at 945. The peremptory writ failed to state a claim for relief when it contained only bare legal conclusions and alleged no facts supporting a ministerial duty on the part of the District to distribute water under Section 73–10–24.

■ 22. Additionally, the express language in Section 73–10–24 suggests that an irrigation district's duty to distribute available water is discretionary rather than mandatory and therefore not subject to mandamus. In order for mandamus to issue, the act sought to be compelled must be "ministerial." *Lovato v. City of Albuquerque,* 106 N.M. 287, 289, 742 P.2d 499, 501 (1987); *In re Grand Jury Sandoval County,* 106 N.M. at 766, 750 P.2d at 466. A "ministerial act" has been defined as "an act or thing which [a public board] is required to perform by direction of law upon a given state of facts being shown to exist, regardless of [the board's] own opinion as to the propriety or impropriety of doing the act in the particular case." *State ex rel. Four Corners Exploration Co. v. Walker,* 60 N.M. 459, 463, 292 P.2d 329, 332 (1956); *El Dorado,* 89 N.M. at 316–17, 551 P.2d at 1363–64.

■ These acts and duties under them are no less ministerial because the public official, upon whom the duty is enjoined, may have to satisfy himself as to the existence of facts necessary to require his action, and where he refuses to act after such a determination is made, mandamus is the proper remedy. Where he refuses or delays, mandamus will issue to compel acts committed to his discretion if the law requires him to act one way or another. The writ will not, however, direct the performance of the particular act from among two or more allowed alternatives.

*El Dorado,* 89 N.M. at 317, 551 P.2d at 1364 (citation omitted). Thus, the exercise of discretionary power or the performance of a discretionary duty cannot be controlled by mandamus. *State ex rel. Bird v. Apodaca,* 91 N.M. 279, 282, 573 P.2d 213, 216 (1977); *State ex rel. KNC, Inc. v. New Mexico Dep't of Fin. & Admin.,* 103 N.M. 167, 172, 704 P.2d 79, 84 (Ct.App.1985).

23. We conclude that, even if the District's Board of Directors, in the exercise of its discretion, had determined that water was insufficient to meet "the continual wants of the entire district" and had declared water to be "available" for distribution, Section 73–10–24 does not mandate that the District distribute the water to members simply upon request by some members. Instead, Section 73–10–24 expressly invests the Board with discretion to decide how to respond under those given facts, stating that "it shall be the

duty of the [B]oard of [D]irectors to distribute all available water upon certain or alternate days to different localities, *as they may in their judgment think best for the interests of all parties concerned.*" (Emphasis added.) This provision allows the Board to act as it, in the exercise of its discretion and judgment, believes best for all members of the District; it does not require the Board to automatically distribute water upon the request of a minority of its members who, for whatever reason, have exhausted their allotment of water for a given year. We thus find the Board's duty under Section 73–10–24 to be discretionary. Mandamus does not issue to control a discretionary duty. *State ex rel. Bird,* 91 N.M. at 282, 573 P.2d at 216.

24. We find other support in the law for the discretionary nature of the Board's duty to distribute and allocate water. *See* § 73–10–16 ("[t]he board shall have power, and it shall be their duty to ... prescribe their duties and establish equitable rules and regulations for the distribution and use of water among the owners of said land"); *Sperry v. Elephant Butte Irrigation Dist.,* 33 N.M. 482, 485–86, 270 P. 889, 890–91 (1928) (recognizing "large discretionary powers conferred upon the board" by statute organizing board to be necessary for district to operate practically and successfully when estimating funds required to meet next year's obligations and determining tax levies). We thus hold that the writs in this case failed to establish a clear duty on the part of the District to act and that the District's duty to distribute water under Section 73–10–24 was discretionary rather than ministerial and consequently not subject to mandamus.

### 3. United States As Indispensable Party

■■■■■ 25. The District contends that the alternative and peremptory writs were also defective because the United States was an indispensable party absent from the action. We agree. Petitioners are correct in stating that, under *C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.,* 112 N.M. 89, 91, 811 P.2d 899, 901 (1991), the failure to join an indispensable party is no longer a jurisdictional defect and that Rule 1–019(B), NMRA 1997 requires the district court to balance

the factors set forth in the rule to determine whether an action should continue in the absence of an indispensable party. Because the District raised the claim of the absence of an indispensable party before appeal, we review the district court's decision for an abuse of discretion. *See id.; Reichert v. Atler,* 117 N.M. 628, 630, 875 P.2d 384, 386 (Ct.App. 1992).

■■■■ 26. Under the facts of this case, we hold that the district court abused its discretion in issuing the alternative and peremptory writs because the United States was an indispensable party in the district court proceedings. All persons whose interests will necessarily be affected by a judgment or order in a particular case are necessary and indispensable parties. *State ex rel. Walker v. Hastings,* 79 N.M. 338, 340, 443 P.2d 508, 510 (Ct.App.1968). The record establishes that the United States had legitimate interests in both reservoirs and the water in the reservoirs that was necessarily affected by the writs. *Cf. Elephant Butte Irrigation Dist. v. Gatlin,* 61 N.M. 58, 294 P.2d 628 (1956). The parties do not dispute that the District is an irrigation district formed in cooperation with the United States under Sections 73–10–1 to –47. The United States owns both the Santa Rosa and Fort Sumner Reservoirs. The Bureau of Reclamation of the United States Department of Interior owns and administers the Carlsbad Project (Project). The Project consists of several dams, reservoirs, canals and other works on the Pecos River, including the Fort Sumner Reservoir. In 1933, the United States was decreed to be the owner of water rights in the Project in *United States of America v. Hope Community Ditch,* U.S. District Court Cause No. 712 (1933). The Santa Rosa Reservoir is owned and administered by the Corps of Engineers of the United States Department of Defense. Water from the Project is stored in both the Santa Rosa and Fort Sumner Reservoirs. The District operates and maintains the Fort Sumner Reservoir pursuant to a contract with the United States under federal reclamation law and state law. *See* § 73–10–1. As we have already noted, the District has no control over the Santa Rosa Reservoir. It may only request of the Bureau of Reclamation that

water be released from the reservoir in accordance with governing federal contracts. All of these facts were presented to the district court by the District and also in a letter from an attorney with the United States Department of Interior to the district court. Despite this showing, the district court refused to quash the alternative writ and proceeded to issue a permanent writ requiring the District to release water from the reservoirs in question.

27. Relying on *C.E. Alexander,* 112 N.M. at 92–93, 811 P.2d at 902–03, Petitioners argue that the district court was correct in holding that the United States was not an indispensable party because the United States was not prejudiced by nonjoinder and knew about the litigation and its potential claims but chose not to participate. *C.E. Alexander,* however, made it clear that prejudice to the missing party is considered by the reviewing court only when the issue of indispensable party is raised for the first time on appeal. *Id.* at 91–93, 811 P.2d at 901–03 (and federal cases cited). Here, it was raised in the district court. Equally important, the mandamus action in this appeal involved other considerations. A writ of mandamus, for example, may not require the performance of an act beyond the power of the respondent or be dependent upon the will of a third party not involved in the suit. *Territory ex rel. Lester v. Sudith,* 15 N.M. 728, 741, 110 P. 1038, 1042 (1910).

28. In *State ex rel. Clark v. Johnson,* 120 N.M. 562, 904 P.2d 11 (1995), our Supreme Court noted that, in a mandamus proceeding, "a party is indispensable if the 'performance of an act [to be compelled by the writ of mandamus is] dependent on the will of a third party, not before the court.' " *Id.* at 570, 904 P.2d at 19 (quoting *Chavez v. Baca,* 47 N.M. 471, 482, 144 P.2d 175, 182 (1943)). In this case, after the peremptory writ was issued, the District attempted to comply with the writ, first by informing the Bureau of Reclamation of the district court's decision and inquiring how much water was "available" for distribution. The Bureau of Reclamation responded with a letter to the Board of Directors refusing to authorize the release of water from the reservoirs and ordering

the District to cease operation of the reservoirs. At a hearing in August of 1996, the district court itself acknowledged that the District was unable to comply with the peremptory writ as a result of the United States' actions. Even though the distribution of water clearly depended on the will of the United States, as owner of the reservoirs and water rights in the Project, the district court nonetheless refused to find that the United States was an indispensable party.

29. Petitioners attempt to analogize this case to *Johnson.* That case, however, is easily distinguished. In *Johnson,* 120 N.M. at 570, 904 P.2d at 19, our Supreme Court held that the tribes and pueblos with whom the Governor signed compacts and agreements were not indispensable parties where the resolution of the mandamus case required the court to look only to the Governor's authority under state law and not to the compacts and agreements themselves. In this appeal, on the other hand, Petitioners assert Section 73–10–24 as the legal basis of the District's duty to perform. That statute expressly provides that an irrigation district's duty to distribute water is *subject to* the acts of Congress, the rules and regulations of the Secretary of Interior and the contracts between the district and the United States. Thus, the District's authority is expressly controlled by federal law and its contracts with the United States. We agree with the District that the provisions of Section 73–10–24 only bolster the District's claim that the United States was an indispensable party to this action.

### III. CONCLUSION

30. We hold that the district court abused its discretion in refusing to apply collateral estoppel to bar Petitioners' assertion of water rights ownership in the District and its claim for a writ of mandamus. We also hold that the writs failed to allege sufficient facts establishing a clear right to mandamus and that the United States was an indispensable party to Petitioner's mandamus action. We therefore reverse and remand with instruc-

tions to set aside the alternative writ and peremptory writ and to dismiss Petitioners' action against the District. The District is awarded costs on appeal.

31. **IT IS SO ORDERED.**

FLORES and BUSTAMENTE, JJ., concur.