2002-NMCA-005

38 P.3d 886

**STATE of New Mexico ex rel. SHELL WESTERN E & P, INC., Petitioners–Appellants,**

v.

**John J. CHAVEZ, Secretary of the Department of Taxation and Revenue, Respondent–Appellee.**

No. 21,225.

Court of Appeals of New Mexico.

Nov. 21, 2001.

Certiorari Denied, No. 27,262, Jan. 9, 2002.

Harold L. Hensley, Jr., Richard E. Olson, Andrew J. Cloutier, Joel M. Carson, III, Hinkle, Hensley, Shanor & Martin, L.L.P., Roswell, NM, for Appellants.

Patricia A. Madrid, Attorney General, Gail MacQuesten, Special Assistant Attorney General, Santa Fe, NM, for Appellee.

*OPINION*

CASTILLO, Judge.

{1} Shell Western E & P, Inc. (Shell) appeals from the order of the district court quashing an alternative writ of mandamus. The question before us is whether the Secre-tary of the Department of Taxation and Revenue properly excluded Shell from participation in a tax amnesty program enacted by the legislature. We hold that Shell should have been allowed to participate in the program and therefore reverse.

**FACTS AND PROCEDURE**

{2} Shell explores for and produces crude oil, natural gas, and natural gas condensate in New Mexico. Late in 1998 the Department of Taxation and Revenue (the Department) determined that Shell had underpaid severance taxes by undervaluing its crude oil and natural gas condensate, and assessed it tax of $989,778.40 and interest then accrued of $660,052.56. Believing that Shell had deliberately undervalued these products, the Department also assessed a civil fraud penalty of $498,406.79, pursuant to NMSA 1978, § 7-1-69(C) (2001). Shell filed a formal protest with the Department.

{3} During the pendency of the protest, the legislature passed the Amnesty Act (the Act), providing for a temporary amnesty for certain taxpayers. 1999 N.M. Laws, ch. 10. We set forth the full text of the Act since it does not appear in the New Mexico Statutes Annotated:

AN ACT

DIRECTING THE TAXATION AND REVENUE DEPARTMENT TO CONDUCT A TEMPORARY TAX AMNESTY PROGRAM; EARMARKING CERTAIN TAX AMNESTY REVENUES FOR THE TAXATION AND REVENUE INFORMATION MANAGEMENT SYSTEMS PROJECT; MAKING APPROPRIATIONS.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF NEW MEXICO:

Section 1. TEMPORARY TAX AMNESTY PROGRAM—DISTRIBUTION OF REVENUES—APPROPRIATIONS.—

A. Two hundred thousand dollars ($200,000) is appropriated from the general fund to the taxation and revenue department for expenditure in fiscal year 2000

for the purpose of conducting a tax amnesty program as provided in Subsection B of this section. Any unexpended or unencumbered balance remaining at the end of fiscal year 2000 shall revert to the general fund.

B. For the taxes and tax acts administered under the Tax Administration Act, the secretary of taxation and revenue, with the concurrence of the governor, is authorized to declare an amnesty period of no more than ninety days, provided that any amnesty period occur within fiscal year 2000. All revenue collected as a result of the tax amnesty shall be identified specifically and reported to the first session of the forty-fifth legislature.

C. The secretary of taxation and revenue is authorized to waive, during the amnesty period only, the interest and penalty provisions under Sections 7–1–67 and 7–1–69 NMSA 1978 on taxes that are:

(1) due and not assessed prior to the day the amnesty period begins; and

(2) due, assessed and not paid on the day the amnesty period begins, but that are paid by the taxpayer or that the taxpayer agrees to pay pursuant to an installment payment agreement entered into with the taxation and revenue department on or before the last day of the amnesty period.

D. Upon deposit into the tax administration suspense fund of tax revenue identified specifically as revenue from taxes paid during the amnesty period attributable to the provisions of this section, and after all necessary distributions and transfers as provided by law, except to the general fund, have been made pursuant to Section 7–1–6.1 NMSA 1978, the first two hundred thousand dollars ($200,000) of the remaining amount shall be distributed to the general fund and the remainder, notwithstanding the provisions of Section 7–1–6.1 NMSA 1978, shall be transferred to the taxation and revenue department and is appropriated for expenditure by the department for the taxation and revenue information management systems project; provided that when the total amount transferred pursuant to this subsection reaches fifteen million dollars ($15,000,000), the remaining revenue from taxes paid during the amnesty period attributable to the provisions of this section shall be distributed pursuant to the provisions of Section 7–1–6.1 NMSA 1978.

Section 2. DELAYED REPEAL.— The provisions of this act are repealed effective July 1, 2001.

{4} After the Governor signed the legislation, the Secretary announced that a tax amnesty program would be in effect from August 16, 1999, through November 12, 1999. The Secretary then issued guidelines for the program which included certain eligibility requirements eliminating participation by taxpayers who had been assessed a civil fraud penalty or who had "formally filed a protest" but did not withdraw "the protest during the tax amnesty period."

{5} Shell disagreed with the Secretary's interpretation of the Act allowing him to limit eligibility. Accordingly, on November 11, 1999, Shell delivered a check to the Department in the amount of $989,778.40, the full principal assessment against it. Shell admitted no fraud or wrongdoing, but offered to dismiss its protest if the Department accepted its payment and accorded its participation in the amnesty program. On December 1, 1999, the Department returned Shell's check and stated that Shell did not qualify for amnesty.

{6} Shell sought an alternative writ of mandamus in the district court compelling the Secretary to accept its tender under the amnesty program. The district court granted the writ, ordering the Secretary to grant amnesty or to show cause why he should not do so. After considering the Secretary's answer to the writ and briefs filed by both parties, and after a hearing, the court quashed the alternative writ and dismissed the proceedings. Shell appeals.

**STANDARD OF REVIEW**

{7} The interpretation of a statute is a question of law which an appellate court reviews de novo. *State v. Cleve*, 1999–NMSC–017, ¶ 7, 127 N.M. 240, 980 P.2d 23. Our primary concern is to implement the intent of the legislature. *Unisys Corp. v.*

**448**

*N.M. Taxation & Revenue Dep't,* 117 N.M. 609, 611, 874 P.2d 1273, 1275 (Ct.App.1994). "In determining this intent, we look primarily to the language of the act and the meaning of the words, and when they are free from ambiguity, we will not resort to any other means of interpretation." *Sec. Escrow Corp. v. State Taxation & Revenue Dep't,* 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App.1988).

## THE SECRETARY'S DISCRETION

■ {8} We must first determine whether the legislature gave the Secretary discretion to determine which classes of taxpayers were eligible for the program. "Mandamus is a drastic remedy to be invoked only in extraordinary circumstances." *Brantley Farms v. Carlsbad Irrigation Dist.,* 1998-NMCA-023, ¶ 12, 124 N.M. 698, 954 P.2d 763. It "lies only to force a clear legal right against one having a clear legal duty to perform an act and where there is no other plain, speedy and adequate remedy in the ordinary course of law." *Id.* ¶ 16. The issue before us is whether the Secretary had a statutory duty to include Shell in the amnesty program. "Mandamus is appropriate to compel the performance of a statutory duty only when that duty is clear and indisputable." *Id.* If the legislature gave the Secretary the discretion to further define taxpayer eligibility or the power to choose between alternatives, mandamus will not lie. *See Perea v. Baca,* 94 N.M. 624, 626–27, 614 P.2d 541, 543–44 (1980) (stating that when transferor meets the requirements of a statute regarding transfer of liquor license, director's duty becomes ministerial and subject to enforcement by mandamus) *El Dorado at Santa Fe, Inc. v. Bd. of County Comm'rs,* 89 N.M. 313, 317, 551 P.2d 1360, 1364 (1976) (holding that mandamus is not appropriate to "direct the performance of the particular act from among two or more allowed alternatives"). To make this determination, we must construe the meaning of the statute.

{9} According to Section 1(B) of the Act, once the tax amnesty program is established, the Secretary is given discretion to decide how long the amnesty program would be in effect. He is "authorized to declare an amnesty period of no more than ninety days,

provided that any amnesty period occur within fiscal year 2000." 1999 N.M. Law ch. 10–1(B). Clearly this language gave the Secretary the power to choose how long the program lasted, so long as it did not exceed ninety days. *See Unisys Corp.,* 117 N.M. at 612, 874 P.2d at 1276 (holding that where legislation gave Secretary choice to act or not to act he had discretion to decide what to do).

■ {10} Similarly, the Act gives the Secretary authority to waive, during the amnesty period only, the interest and penalty provisions under NMSA 1978, §§ 7–1–67 and 69 (2001). Section 7–1–67 sets the rate of interest to be charged on taxes imposed and not paid. Section 7–1–69 relates to the imposition of civil penalties for failure to pay taxes or file a return. Section 7–1–69(C) assesses a civil fraud penalty and states as follows:

> C. In the case of failure, with willful intent to evade or defeat a tax, to pay when due the amount of tax required to be paid, there shall be added to the amount fifty percent of the tax or a minimum of twenty-five dollars ($25.00), whichever is greater, as penalty.

The Secretary's eligibility guidelines prohibited persons or businesses that had been assessed a civil fraud penalty as per Section 7–1–69(C) from participating in the program. The Secretary is not, however, given discretion as to which paragraphs of the enumerated sections he may waive. Here, the Secretary chose to waive interest but not to waive penalty when the penalty was assessed based on the Secretary's determination of fraud. The legislature provided that the amnesty would extend to all paragraphs of Section 7–1–69. Had the legislature intended to give the Secretary a choice of paragraphs to which the waiver would apply, it would have said so, just as it gave the Secretary the discretion to decide the length of the program.

■ {11} The Secretary argues that his agency interpreted the 1985 legislation authorizing a tax amnesty in the same way, and that the legislature must be presumed to have been aware of the agency's earlier actions. " '[A] presumption that the Legislature is aware of an administrative construction of a statute should be applied if the

agency's interpretation of the statutory provisions is of such longstanding duration that the Legislature may be presumed to know of it.'" *Alexander v. Anderson*, 1999–NMCA–021, ¶ 17, 126 N.M. 632, 973 P.2d 884 (quoting *Moore v. Cal. State Bd. of Accountancy*, 2 Cal.4th 999, 9 Cal.Rptr.2d 358, 831 P.2d 798, 809 (1992)). The Department's implementation of similar legislation for a few months fourteen years before the Act was passed is not "of such longstanding duration that the Legislature may be presumed to know of it." *Id.*

{12} We hold that the Secretary had no discretion to pick and choose between Sections 7–1–67 and 7–1–69 or which paragraphs of Section 7–1–69 would be subject to the amnesty program.

## THE NEW MEXICO CONSTITUTION

■ {13} The Secretary protests that to interpret the Act as we have violates Article IV, Section 34 of the New Mexico Constitution, because such interpretation would change the rights and remedies of the State and also change set statutory rules of procedure under the Tax Administration Act, NMSA 1978, §§ 7–1–1 to –82 (1965, as amended through 2001). Section 34 provides that "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." We disagree with the Secretary.

{14} There is no dispute that Shell's protest was a pending case at the time the amnesty was implemented. *See Phelps Dodge Corp. v. Revenue Div. of the Dep't of Taxation & Revenue*, 103 N.M. 20, 23, 702 P.2d 10, 13 (Ct.App.1985) (holding that a taxpayer's request for a tax refund was "a 'pending case' within the meaning of Article IV, Section 34").

{15} The Act's amnesty offer is just that, an offer to taxpayers to forego penalty and interest if the taxpayers pay the tax assessed. Implicit in this is that, upon payment, any pending protest becomes moot. If the taxpayer has a protest pending, the issues of penalty and interest will be settled either through the protest process or the amnesty process. The choice of process is that of the taxpayer. The State has no choice. Rather, the State simply proceeds pursuant to statutory directive and any lawful regulation based on the taxpayer's choice of process to resolve the issues.

{16} Under these circumstances, we fail to see how the Act itself, on its face, without the Secretary's interpretation of it, violates Article IV, § 34. The taxpayer's rights or remedies are unaffected unless and until the taxpayer voluntarily chooses to affect those rights or remedies. The Department can hardly take the position that its rights or remedies are affected, since the Department is the State, and the State is binding itself to a settlement process (the amnesty) different than and in lieu of the protest process and any settlement or compromise procedures in the Tax Administration Act.

## SHELL'S TENDER OF PAYMENT AND OFFER TO WITHDRAW ITS PROTEST

■ {17} The Secretary further contends that Shell's tender of payment and offer to withdraw its protest were ineffective. The Act requires that the taxpayer whose liability has been assessed pay the principal (or enter into a payment plan) during the amnesty period. 1999 N.M. Laws, ch. 10, § 1(C)(2). The Secretary contends that Shell could have revoked its payment at any time and for any reason, and that he was within his discretion in not accepting Shell's tender as a "payment."

{18} The Secretary relies on 3 NMAC 1.7.9:

Tender by a taxpayer and acceptance by the secretary or secretary's delegate of payment of a protested assessment prior to resolution of the protest constitutes an agreement:

A. by the secretary to waive the taxpayer's election of remedies under Section 7–1–23 NMSA 1978 upon a resolution of the protest favorably to the taxpayer so as to permit the taxpayer to file a claim for refund for the portion of the protested assessment resolved in favor of the taxpayer; and

B. by the taxpayer to waive the accrual of interest on any refund arising from the portion of the protested assessment re-

solved in favor of the taxpayer. [11/5/85, 8/15/90, 11/17/95, 10/31/96]

The Secretary contends that 3 NMAC 1.7.9 allows payment of the principal amounts due during a protest to prevent the accrual of further interest and penalty. The Secretary states his policy is to return money paid under 3 NMAC 1.7.9 whenever the taxpayer so requests. We find nothing in the regulation to alert the taxpayer that the Secretary would consider payment under the tax amnesty program as revocable at the option of the taxpayer.

{19} Moreover, even if we were to assume for purposes of this opinion that a payment under 3 NMAC 1.7.9 is generally revocable at any time, we disagree that Shell's specific tender of payment in this case was revocable at any time. Shell offered to dismiss its protest if the Secretary accepted its payment of the principal amount claimed owed under the amnesty program. Had the Secretary accepted Shell's offer, the parties would have entered into a binding settlement contract under which Shell would have first been required to dismiss its protest and could not have requested its money back, followed by the Secretary's reciprocal obligation to waive interest and penalty under the amnesty program as authorized by the Act. UJI 13–801 NMRA 2001. Here, Shell offered to pay under the amnesty program as set out in the Act and acceptance of Shell's check would have formed a contract binding Shell to proceed to withdraw its protest. Neither consideration nor mutual assent would have been an issue. We see no discretion to reject the tendered payment.

## CONCLUSION

{20} We hold that the Secretary did not have discretion to exclude Shell from the amnesty program because of the pending civil fraud penalty assessment under Section 7–1–69(C), nor discretion to exclude Shell from the amnesty program because Shell conditioned its withdrawal of its protest upon the Secretary's acceptance of Shell's tendered payment of the assessed taxes due. We further hold that in granting amnesty to Shell the Act does not violate Article IV, Section 34 of the New Mexico Constitution. We hold, in addition, that the Secretary had no discretion to reject Shell's payment tender with its offer to withdraw its protest upon acceptance of the payment. In sum, the Secretary had a "clear and indisputable" statutory duty to include Shell in the amnesty program. *Brantley Farms*, 1998–NMCA–023, ¶ 16, 124 N.M. 698, 954 P.2d 763. We remand this case to the district court for entry of a peremptory mandamus requiring the Secretary to grant amnesty to Shell under the amnesty program.

{21} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and JONATHAN B. SUTIN, Judge.