2006-NMSC-051

146 P.3d 312

**Barbara V. JOHNSON, Roger Gonzales, and Republican Party of New Mexico, Petitioners,**

v.

**Rebecca VIGIL–GIRON, New Mexico Secretary of State, and Patricia Madrid, New Mexico Attorney General, Respondents,**

and

**Hector Balderas, Real Party in Interest,**

and

**New Mexico Democratic Party, Intervenor.**

**No. 30,039.**

Supreme Court of New Mexico.

Nov. 2, 2006.

**668**

Carpenter Law, P.C., Joshua Carpenter, Albuquerque, NM, for Petitioners.

Patricia A. Madrid, Attorney General, Christopher D. Coppin, Special Assistant Attorney General, David K. Thomson, Assistant Attorney General, Zachary A. Shandler, Assistant Attorney General, Santa Fe, NM, for Respondents.

Freedman Boyd Daniels, Hollander Goldberg & Ives, P.A., Joseph Goldberg, Matthew L. Garcia, Albuquerque, NM Garcia & Vargas, LLC, David P. Garcia, Ray M. Vargas, II, Santa Fe, NM, for Real Party In Interest.

Jones, Snead, Wertheim & Wentworth, P.A., Jerry Todd Wertheim, Santa Fe, NM, for Intervenor.

**OPINION**

BOSSON, Chief Justice.

{1} In this original proceeding in mandamus, Petitioners Barbara Johnson, Roger Gonzales, and the Republican Party of New Mexico, make three separate challenges to the upcoming 2006 general election ballot. While each Petitioner relies on different arguments, all three assert that the Secretary of State erred in including or excluding certain candidates from the 2006 general election ballot.

{2} In reaching the merits of Petitioners' claims, we must interpret certain sections of New Mexico's Election Code. Petitioner Johnson's and Petitioner Gonzales's claims require us to interpret NMSA 1978, § 1–8–8 (1995) and NMSA 1978, § 1–8–26 (1997). The Republican Party's claim requires us to review NMSA 1978, § 1–8–9 (1975). As explained in detail below, based on our examination of these sections of our Election Code, we find the arguments of all three Petitioners unpersuasive. Accordingly, we hold that the Secretary of State did not err in printing the 2006 general election ballot, and we deny the writ.

**BACKGROUND**

{3} We address three different challenges to the 2006 general election ballot, involving a Second Judicial District Judge position, a House of Representatives District 68 opening, and the State Auditor position. The discussion and resolution of each issue is highly reliant on specific facts which we address below.

**DISCUSSION**

**Second Judicial District Judgeship**

{4} Petitioner Johnson was nominated by the Republican Party of Bernalillo County (County Central Committee) to fill a district judge position that arose after the June primary with the retirement of District Judge James Blackmer, effective April 30, 2006. *See State ex rel. Noble v. Fiorina,* 67 N.M. 366, 369, 355 P.2d 497, 499 (1960) (when timing of resignation precludes a political party from choosing a candidate at the primary election, then the party may fill the vacancy after the primary by a central committee nomination). Pursuant to that nomination, the County Central Committee Chairman sent a nomination letter to the Bernalillo County Clerk on September 6, 2006. A courtesy copy of that letter was also sent to the Secretary of State. In its letterhead, title, text and signature, the letter referred to the County Central Committee as the nominating authority.

{5} The Bernalillo County Clerk rejected the filing and sent a letter to the County Central Committee explaining her reasons why the nomination letter was "improperly filed:" (1) under Section 1–8–8(A)(1) district judge positions are to be nominated by the

*state* central committee, not the *county* central committee, and (2) the nomination should have been filed with the Secretary of State, not the county clerk, as required by Section 1–8–25.[1] The Secretary of State notified Johnson on September 20, 2006, that she would not appear on the ballot because she did not qualify as a candidate pursuant to Section 1–8–8(A)(1).

{6} Section 1–8–8, entitled "**Vacancy on general election ballot; occurring after primary**," in pertinent part states:

A. If after a primary election a vacancy occurs, for any cause, in the list of nominees of a qualified political party for any public office to be filled in the general election, ... the vacancy on the general election ballot may be filled by:

(1) the *central committee of the state political party* filing the name of its nominee for the office with the proper filing officer when such office is a federal, state, *district* or multi-county legislative district office; and

(2) the *central committee of the county political party* filing the name of its nominee for the office with the proper filing officer *when such office is a magistrate, county or a legislative district office where the district is entirely within the boundaries of a single county.*

...

C. Appointments to fill vacancies in the list of a party's nominees shall be made and filed at least *fifty-six days* prior to the general election....

D. When the name of a nominee is filed as provided in this section, such name shall be placed on the general election ballot as the party's candidate for that office.....

(Emphasis added.)

{7} Petitioner Johnson asserts that Section 1–8–8(A)(2) applies to her candidacy because the Second Judicial District Court position is located in a single county, Bernalillo County.

She relies on two New Mexico Attorney General Opinions interpreting a predecessor version of Section 1–8–8, one of which concludes "[i]f the Judicial District is composed of a single county, as the Second Judicial District now is, there can be no question but that the nominee is to be selected by the *County Central Committee*." N.M. Att'y Gen. Op. 72–49 (1972) (emphasis added); N.M. Att'y Gen. Op. 74–33 (1974) (concluding that a nominee for a legislative district located entirely within one county, as opposed to a multi-county legislative district, may be chosen by the county central committee). Petitioner therefore claims that it was proper for her to be nominated by the County Central Committee instead of the State Central Committee. She also argues that even if it was inappropriate to be nominated by the County Central Committee, her name should still be on the ballot because the Secretary of State did not notify her that she was off the ballot until well after the fifty-six day deadline for filling a vacancy set forth in Section 1–8–8(C).

■ {8} In examining the statute, we are impressed that the Legislature included a clear designation of when the County Central Committee or the State Central Committee fills a vacancy. The statute explicitly gives authority to the State Central Committee when the "office is a federal, state, *district* or multi-county legislative district office." Section 1–8–8(A)(1) (emphasis added). It gives the County Central Committee nominating authority only when the "office is a magistrate, county or a legislative district office where the district is entirely within the boundaries of a single county." Section 1–8–8(A)(2).

■ {9} The nomination in question here is for a "district" court judicial position, not a "magistrate, county or legislative district office where the district is entirely within the boundaries of a single county." Thus, based

1. A courtesy copy of the letter had been sent to the Secretary of State, and based on that letter, the Secretary of State, while never notifying Johnson that the letter had been accepted, put Johnson's name on the Secretary of State's official website as the Republican candidate for District Judge in the Second Judicial District,

Division 2. However, on September 20, 2006, Johnson was informed by the Secretary of State, both orally and in writing, that after further review by the legal department, she had been removed from the website and her name would not appear on the general election ballot.

on the character of the position, the statute designates it as one to be filled by the state central committee and not the county central committee. This legislative choice is consistent with other legislative indicators. A district judgeship is a *state* position, not a county position. *See Perea v. Bd. of Torrance County Comm'rs,* 77 N.M. 543, 546, 425 P.2d 308, 309–10 (1967) (noting that a district court judge is a "state officer" thus employees under the control of district court judges are not county employees); NMSA 1978, § 1–8–25 (1998) (stating that all judicial offices, other than magistrates, file their declarations of candidacy with the secretary of state along with all the other state positions while the county positions file their declarations with the county clerk).

▌ {10} We also observe that the two Attorney General Opinions on which Petitioner relies involved an older statute, since replaced by the current form of Section 1–8–8. When the Legislature amended the statute in 1979, it included a clear designation of when the County Central Committee or the State Central Committee is to act in the nomination process. While prior to the statute's amendment it arguably might have been proper for the County Central Committee to nominate Petitioner Johnson, the Legislature subsequently clarified the law, and the Secretary of State was obliged to follow it.[2] Thus, we hold that a district court judge position falls squarely under Section 1–8–8(A)(1), which means that a nomination to fill a vacancy for a district judge position must come from the state central committee of a political party.

---

2. In the alternative, Johnson argues that even if the nomination should have been submitted by the State Central Committee, she should still be allowed on the ballot because the Secretary of State did not inform her that she was not on the ballot in a timely fashion. She relies on Section 1–8–26, entitled "**Primary Election Law; time of filing; documents necessary to qualify for ballot; challenge.**" Section 1–8–26(D) states that a qualified candidate shall be mailed notice of placement on the ballot "no later than 5:00 p.m. on the Tuesday following the filing date." Based on this language, Johnson argues that since the filing date was September 12, 2006, she should have been notified that she was taken off the ballot by September 19, 2006. She was not notified until September 20, 2006.

### District 68 of the New Mexico House of Representatives

{11} The conflict over the names on the ballot for State Representative for District 68 extends back to the primary election on June 6, 2006. In that election, Representative Hector Balderas won the Democratic primary for the district. Importantly, no Republican candidate ran in that primary election. Balderas subsequently withdrew from the race for District 68 to run for State Auditor. His withdrawal on September 5, 2006 was timely under New Mexico law. *See* § 1–8–9 (withdrawal must occur at least sixty-three days prior to the general election).

{12} Then, on September 9, 2006, the State Central Committee of the Republican Party sent the Secretary of State a letter nominating Roger Gonzales as the Republican candidate for the District 68 Representative seat. The Secretary of State rejected the nomination. Petitioner Gonzales argues that the rejection was in error because his nomination was in compliance with state law, and alternatively, that even if not in compliance, he should be included on the ballot because the Secretary of State did not inform him by mail that his name would not be included on the ballot. As we have already addressed the notice question above in regard to Petitioner Johnson, *supra* note 2, we will not belabor the point here and only address Petitioner Gonzales's nomination question. *See* § 1–8–26 (discussing notice but only for *primary* elections).

▌ {13} Because District 68 is a multi-county legislative district, Gonzales's nomina-

Johnson's argument is flawed in that it seeks to apply to a *general* election, a statute intended to apply only to *primary* elections. As brought to our attention by Petitioner in oral argument, we recognize that there are no similar time limitations regarding candidate notification for general elections. Again, the Legislature only included such limitations in the Election Code for primary elections. This is a determination for the Legislature to make, and the Legislature chose not to extend its notification provisions to general elections. We are thus bound by the language of Section 1–8–26(D) to apply it only to primary elections.

tion is governed by Section 1–8–8(A)(1) of the Election Code, the same statute applicable to Petitioner Johnson. Unlike Johnson, however, Gonzales was properly nominated by the State Central Committee to represent a multi-county district, and the nomination letter was sent to the Secretary of State as required. Therefore, the only question regarding this particular nomination becomes whether, under the law, there was indeed a vacancy on the ballot that the State Central Committee was entitled to fill.

{14} The Secretary of State argues that there was no vacancy because the Republican Party did not run a candidate for this particular position in the primary. Democrat Balderas was the only candidate in the primary. Thus, the Secretary of State asserts that while the Democratic State Central Committee could nominate someone to fill the vacancy caused by Balderas's withdrawal, no similar vacancy existed for the Republican Party.

{15} Reviewing our precedent, we conclude there is ample support for the Secretary of State's position. *See Skeen v. Hooper*, 631 F.2d 707, 709, 711 (10th Cir.1980) (relying on the federal district court's decision that, under Section 1–8–8(A), a vacancy does not exist on the general election ballot unless the party ran a candidate in the primary election; also noting that a compelling state interest was served by ensuring "elections in New Mexico are conducted in a fair, honest and orderly fashion, unaccompanied by chaos, even when officials are confronted by a sudden change in events"); *State ex rel. Van Schoyck v. Bd. of County Comm'rs*, 46 N.M. 472, 475, 481–82, 131 P.2d 278, 280, 284 (1942) (holding, under previous version of Section 1–8–8, that unless a candidate is nominated in the primary election there is no vacancy for the central committee to fill); N.M. Att'y Gen. Op. 80–31 (1980) (stating that a party could not nominate a candidate to fill a vacancy if that party had "offered no candidate for that office in the primary election"); *cf. Fiorina*, 67 N.M. at 369, 355 P.2d at 499 (stating if the election is of a type where there was no opportunity for the political party to choose a nominee in the primary, such as a judiciary retirement occur-

ring *after* a primary election, then there is a valid vacancy in the general election even if the party did not run a candidate in the primary election). While these precedents on the issue all address a previous version of Section 1–8–8, the changes made to the Election Code in 1979 did not alter the phrase, "If after a primary election a vacancy occurs...." Accordingly, the Legislature has not sought to alter the outcome and the interpretation of "vacancy" offered in these cases. Thus, without a primary candidate there can be no vacancy, and without a vacancy, there can be no substitute candidate, not at least without some legislative amendment of Section 1–8–8. We affirm the Secretary of State's decision to exclude Petitioner Gonzales from the general election ballot.

### The State Auditor

{16} The Republican Party of New Mexico has petitioned this Court to remove Hector Balderas's name from the general election ballot for the State Auditor position. Petitioner asserts that the previous Democratic candidate for State Auditor, Jeff Armijo, did not withdraw his name in time to create a statutory "vacancy" that the Democratic State Central Committee could fill. Petitioner also claims that even if there was a proper withdrawal, notice of the Hector Balderas nomination was not sent to the Secretary of State within the proper deadline.

{17} Armijo, the previous Democratic nominee for State Auditor, held a press conference on August 29, 2006, to announce that he was withdrawing from the race. That same day, the Democratic Party sent a copy of the Armijo press release to the Secretary of State. The deadline for withdrawing from the general election was September 5, 2006. *See* § 1–8–9 (withdrawal must be complete at least sixty-three days prior to the general election). The Secretary of State interpreted Armijo's statements as a timely withdrawal, creating a vacancy.

{18} However, on September 5, 2006, Armijo held another press conference purporting to recant his previous withdrawal. In response to these actions, on September 8, 2006, the State Democratic Party filed a lawsuit against Armijo and the Secretary of

State in the First Judicial District Court to restrain Armijo from being placed on the ballot. That same day Armijo filed a lawsuit against the Secretary of State in the Second Judicial District Court seeking to have his name placed on the ballot. Facing a September 12, 2006 deadline for naming a candidate for the State Auditor position, the Democratic Party State Central Committee nominated Hector Balderas as its candidate for State Auditor on September 9, 2006. In compliance with the Election Code the committee notified the Secretary of State of the nomination, which was received September 11, 2006, a day before the statutory deadline of September 12, 2006. A day later, on September 13, 2006, all the parties to the two pending lawsuits filed a Stipulation of Dismissal with Prejudice in both cases. Armijo has not chosen to challenge this legal outcome or otherwise contest his withdrawal in this Court.

██ {19} Petitioner's main argument is that Armijo did not properly withdraw; therefore, Balderas could not be nominated and put on the ballot because there was no vacancy under Section 1–8–8(A). Petitioner, however, has not referred us to a statutory provision, and we have not been able to locate any, that specifies how a candidate withdraws from a general election. The only citation Petitioner gives us is to NMSA 1978, § 1–8–44 (1999), entitled **"Primary election law; withdrawal of candidates,"** which specifies how a candidate withdraws from a *primary* election.

{20} There are several problems with reliance on Section 1–8–44. First, as noted in the title, Section 1–8–44 only applies to primary elections, and the ballot in question here is for a general election. As conceded by Petitioner in oral argument before this Court, there is no provision in the Election Code setting forth any requirements for withdrawal of a candidate from a *general* election, other than timeliness.

{21} Section 1–8–44 has other problems as well. Even if we were to attempt to apply Section 1–8–44 to general elections, the only requirement it lists is that the withdrawal be submitted "no later than the first Tuesday in April before that primary election." There is no specific requirement that the withdrawal be submitted in writing to the Secretary of State as implied by Petitioner. The predecessor to Section 1–8–44 did include such a requirement. In 1955, the Legislature said that to withdraw the nominated person "shall notify the secretary of state or county clerk in writing by a sworn statement. . . ." NMSA 1953, § 3–11–66 (1955 Pocket Supp.). The requirement of a writing was repealed by 1963 N.M. Laws, ch. 317. The removal of the writing requirement from Section 1–8–44, and the failure to include any similar requirement in Section 1–8–9 pertaining to general elections, evinces a legislative intent that withdrawal does not require a formal written letter to the Secretary of State. Therefore, the Secretary of State was within her discretion to rely on Armijo's August 29 press conference in which he withdrew from the State Auditor race.[3]

██ {22} The absence of a formal withdrawal requirement in the Election Code also brings into question the propriety of mandamus in this case. Petitioner filed this action as an emergency writ of mandamus. "Mandamus lies only to force a clear legal right against one having a clear legal duty to perform an act and where there is no other plain, speedy and adequate remedy in the ordinary course of law." *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998–NMCA–023, ¶ 16, 124 N.M. 698, 954 P.2d 763 (citing *El Dorado at Santa Fe, Inc. v. Bd. of County Comm'rs*, 89 N.M. 313, 316, 551 P.2d 1360, 1363 (1976)). When the legal duty in question is based on a statute, mandamus is appropriate "only when that duty is clear and indisputable." *Id.* (citing *Witt v. Hartman*, 82 N.M. 170, 172, 477 P.2d 608, 610 (1970)).

**3.** Petitioner argues that the withdrawal was not presented to the Secretary of State until after the September 5, 2006 deadline. As noted above, Armijo withdrew on August 29, 2006. A copy of that press conference release was given to the Secretary of State. As we have just held, no other formal requirements were necessary. Therefore, the withdrawal met the statutory deadline as found in Section 1–8–9.

{23} Petitioner claims the Secretary of State violated her clear legal duty by not requiring that Armijo's withdrawal be in writing before allowing Balderas to be added to the ballot. Such a duty is not expressed in either Section 1–8–9 or Section 1–8–44. Hypothetically, even if applicable, neither statutory provision clearly and indisputably requires such a withdrawal to be in writing. Therefore, for this additional reason, mandamus is not appropriate, in any event, regarding the State Auditor's position on the ballot presently held by Balderas.

## CONCLUSION

{24} For these reasons we deny the writ of mandamus and hold that the Secretary of State did not err in printing the 2006 general election ballot.

{25} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.